[No. A099012. First Dist., Div. One. July 16, 2003.]

HARTFORD CASUALTY INSURANCE COMPANY, Plaintiff,
Cross-defendant and Appellant, v.
TRAVELERS INDEMNITY COMPANY, Defendant, Cross-complainant and
Respondent.

COUNSEL

Nielsen, Haley & Abbott, James C. Nielsen and Thomas H. Nienow for Plaintiff, Cross-defendant and Appellant.

Morison-Knox Holden Melendez & Prough, William C. Morison-Knox, Marc J. Derewetzky and Robert J. Scott, Jr., for Defendant, Cross-complainant and Respondent.

OPINION

**MARCHIANO, P. J.**—Hartford Casualty Insurance Company (Hartford) appeals from a summary judgment in this declaratory relief action against Travelers Indemnity Company (Travelers). The parties ask us to resolve issues involving the effect of certain lease provisions on coverage, the scope of coverage for additional insureds under the tenant's policy, the relationship of other insurance clauses, and the equitable considerations of competing other insurance clauses. We conclude that the trial court correctly determined that the landlord was an additional insured under the tenant's Hartford policy and that Hartford's coverage was not limited to liability directly caused by the tenant, Hartford's insured. We reject Hartford's argument that the presumption pertaining to settlement of an underlying action set forth in *Peter Culley & Associates v. Superior Court* (1992) 10 Cal.App.4th 1484 [13 Cal.Rptr.2d 624] (*Peter Culley*) establishes a lack of coverage. Based on the equitable considerations involving the facts of this case and the policy language, we also reject Hartford's attack on the trial court's determination that the Travelers policy for the landlord was excess. We, therefore, affirm the judgment.

## BACKGROUND

On Friday, June 18, 1999, Andrew Daher, an employee of Cornerstone Research, Inc. (Cornerstone), was working late at night at Cornerstone's offices after normal business hours. Cornerstone leased its office space from MPOC Investors, LLC (MPOC). While on a third floor exterior deck at the Cornerstone offices, Daher tripped or somehow fell from the deck to a concrete driveway below, resulting in his death. On May 24, 2000, Daher's parents filed an action against MPOC alleging causes of action for premises liability and negligence per se. (*Daher et al v. MPOC Investors, LLC, et al.,* San Mateo County Super. Ct. No. 413069 (*Daher* action).)

Travelers, MPOC's insurer, retained Attorney Robert Ford and initially assumed the defense of the *Daher* action. On October 31, 2000, Travelers tendered the defense of the *Daher* action to Hartford, pursuant to the additional insureds clause in Hartford's policy issued to Cornerstone. Hartford accepted, with a reservation of rights. Attorney Ford continued to defend the action at Hartford's request.

On November 20, 2000, Hartford filed a declaratory relief action against Travelers, seeking a determination that MPOC was not entitled to defense or indemnity under the Hartford policy. Hartford sought reimbursement of funds expended for defense and indemnity in the *Daher* action.

On January 19, 2001, Travelers filed a cross-complaint seeking a declaration that Hartford was obligated to defend and indemnify MPOC under the Hartford policy and under the terms of the lease agreement between Cornerstone and MPOC. It also sought a determination that any potential coverage by Travelers was excess to the Hartford coverage.

On or about August 10, 2001, Hartford and Travelers agreed to settle the *Daher* action. Hartford paid $495,000 to the plaintiffs and Travelers contributed $255,000.[1] Hartford paid attorney Ford $38,422.35 in fees and costs, plus $16,473.35 in additional costs such as fees of court reporters. Hartford and Travelers each reserved the right to seek contribution from the other in connection with the settlement payments.

### Terms of the MPOC-Cornerstone Lease

The lease between Cornerstone and MPOC provided that Cornerstone leased the second floor and a portion of the third floor of the office building located at 1000 El Camino Real in Menlo Park.[2] Although the drawings

---

[1] We have found no indication in the record on appeal for the basis of this allocation.

[2] The lease contains language that appears to state that Cornerstone also leased part of the first floor and the entire third floor.

defining the rented premises in the lease did not include exterior decks, Hartford apparently concedes that Cornerstone employees had access to a wooden deck on the third floor exterior balcony. Hartford submitted pictures of the balcony area in support of a motion for summary judgment. The pictures showed a table and chairs on a fenced wooden deck on the balcony. The balcony area outside the wooden deck area is apparently the area from which Daher fell.

The lease required MPOC to maintain and repair the common areas of the building. MPOC retained the right to control and prevent access to the halls, elevators, stairways, roof and balconies under the lease. The lease required Cornerstone to comply with the building rules attached to the lease and all applicable "statutes, ordinances, rules, regulations, orders and requirements in effect during the term regulating the use by [Cornerstone] of the Premises."

Cornerstone agreed to hold MPOC harmless from and defend it against all claims for injury or death of any person, "arising in or from the use of the Premises by [Cornerstone]," or "arising from the negligence or willful misconduct of [Cornerstone], its employees, agents or contractors in, upon or about those portions of the Building other than the Premises." The lease required Cornerstone to endorse its commercial general liability insurance policy to name MPOC and its property management company as additional insureds, and to provide that MPOC's insurance is excess and noncontributing. However, Cornerstone's policy with Hartford did not contain this language in its additional insureds endorsement.

*The Insurance Policies*

Hartford issued a commercial general liability policy to Cornerstone that was in effect at the time of Daher's death. A special endorsement to the Hartford policy provided that the definition of an "insured" included "any person or organization with whom you agreed, because of a written contract or agreement or permit, to provide insurance such as is afforded under this policy, but only with respect to your operations, 'your work' or facilities owned or used by you." "You," in the Hartford policy, refers to Cornerstone. The policy further provides the following definitions: " 'Your work' means: [¶] a. Work or operations performed by you or on your behalf; and [¶] b. Materials, parts or equipment furnished in connection with such work or operations. [¶] 'Your work' includes: [¶] a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work'; and [¶] b. The providing of or failure to provide warnings or instructions."

Travelers issued a commercial general liability policy to MPOC that was also in effect at the time of Daher's death. An endorsement to the Travelers

policy entitled "Other Insurance-Additional Insureds" provides: "This insurance is excess over any of the other Insurance; whether primary, excess, contingent or on any other basis: [¶] ... [¶] (4) That is valid and collectible Insurance available to you [MPOC] if you are added as an additional insured under any other policy. [¶] When this Insurance is excess, we will have no duty under Coverage A or B to defend any claim or 'suit' that any other Insurer has a duty to defend." This provision in the Travelers policy tracked the statement in the Lease regarding MPOC's insurance being excess.

*Resolution of Summary Judgment Motions*

Hartford filed a motion for summary judgment prior to the August 2001 settlement of the *Daher* action. The motion was heard and submitted on October 25, 2001, but the court did not issue a decision until January 4, 2002. In that decision, the court denied Hartford's motion, and determined that MPOC was covered as an additional insured under the Hartford policy.

On December 14, 2001, after the *Daher* action was settled, Hartford and Travelers filed cross-motions for summary judgment, each seeking reimbursement for their settlement contributions. Hartford also requested recovery of its defense fees and costs.

On February 15, 2002, the court issued an order granting Travelers' motion. The court agreed with the January 4 decision, finding that MPOC was an additional insured entitled to coverage under the Hartford policy. The court also determined that Travelers met its burden of showing that Hartford's coverage was primary and Travelers' coverage was excess and that Travelers was entitled to recover the amounts it paid in settlement of the *Daher* action. Judgment was entered on April 30, 2002, from which Hartford timely appeals.

## DISCUSSION

Hartford raises several issues on appeal. It first contends that MPOC is not an additional insured under Cornerstone's policy. Next, it argues that its additional insured endorsement contains the restrictive phrase, "but only with respect to," that limits coverage to liability directly caused by Cornerstone's operations or use of the premises. Because the *Daher* action was directed only at MPOC, Hartford contends that the *Daher* liability was not even potentially covered and its duty to defend never arose.

Hartford also argues that because the *Daher* action settled, Travelers must first establish Cornerstone's liability and the existence of coverage in order to trigger Hartford's coverage. Hartford argues that the *Daher* liability arose solely from MPOC's own negligence and was therefore not covered by the additional insured endorsement.

Finally, Hartford contends that even if it covered MPOC along with Travelers, the trial court erred by giving effect to the excess clause in Travelers' policy. Hartford claims that Travelers should be ordered to reimburse it for a portion of the expense of defending and settling the *Daher* action.

We have reviewed Hartford's claims, but find no basis for reversal of the judgment. We discuss the claims in the order presented by Hartford.

### MPOC Is an Additional Insured on the Hartford Policy

Hartford argues generally that contracting parties must clearly manifest the intent to name a third party beneficiary such as an additional insured in an insurance policy. In this case, the requirement is unmistakably met by the terms of the lease contract between MPOC and its tenant, Cornerstone. The lease requires Cornerstone to endorse its commercial general liability insurance policy to designate MPOC as an additional insured. The Hartford policy recognizes as an insured, any person or organization with whom Cornerstone agreed in a written contract to provide insurance. MPOC is an additional insured under the Hartford policy through its definitional language.

### Coverage Is Not Limited to Liability Directly Caused by Cornerstone

Cornerstone's policy provides coverage to an additional insured, "but only with respect to" Cornerstone's work or operations or facilities owned or used by Cornerstone and Cornerstone's providing of or failure to provide warnings or instructions. Hartford apparently concedes that there would be coverage if the provision had substituted "liability arising out of" in place of the questioned phrase. Hartford attempts to distinguish the qualifying language, "but only with respect to," in its policy from the often used "arising out of" language discussed in cases such as *Acceptance Ins. Co. v. Syufy Enterprises* (1999) 69 Cal.App.4th 321 [81 Cal.Rptr.2d 557] (*Syufy*). The main problem with Hartford's argument is that the descriptive terms that follow the phrase "with respect to" characterize its obligations to MPOC, rather than the definition given to the "with respect to" language.

Hartford urges this court to interpret the phrase "but only with respect to" as restrictively referring only to liability that is directly caused by Cornerstone. Neither *Syufy* nor the language of Hartford's policy support that narrow semantic interpretation.

In *Syufy, supra,* 69 Cal.App.4th 321, the employee of a contractor doing work on one of Syufy's theaters was injured while using a defective hatch to leave the job site on a personal errand. The employee sued the building

owner. The owner, included as an additional insured on the contractor's insurance policy, knew of the defect and had negligently maintained the hatch. The language including the owner as an additional insured stated that coverage was " 'only with respect to liability arising out of' " work performed by the contractor, or on its behalf. Acceptance Insurance Company (AIC), the contractor's insurer, funded a settlement on the owner's behalf for $400,000 after advising that there was potentially no coverage under the additional insured endorsement. AIC then filed an action against the building owner and its excess insurer seeking reimbursement. (*Id.* at pp. 324–325.)

AIC argued that because the employee was not working when he was injured and the defect in the hatch was solely due to Syufy's negligence, there was no coverage under the additional insured endorsement. (*Syufy, supra,* 69 Cal.App.4th at p. 326.) In rejecting that claim, the *Syufy* court interpreted the "arising out of" language as establishing a broad "but for" causation test and stated that any connection between the liability and the contractor's operations would trigger the insurer's obligations. (*Id.* at pp. 328–329.) The court noted that "California courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions. It is settled that this language does not import any particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship." (*Id.* at p. 328.)

Applying a commonsense approach to the facts of the case, the court determined that the relationship between the injury and the work on Syufy's building was more than incidental because the worker had to pass through the hatch to get to the work site. Syufy's own negligence in maintaining the hatch was irrelevant because the policy did not address fault. (*Syufy, supra,* 69 Cal.App.4th at p. 328–329.)

Hartford also cites *Consolidation Coal Co., Inc. v. Liberty Mut. Ins. Co.* (W.D.Pa. 1976) 406 F.Supp. 1292 *(Consolidation Coal), Stevens Painton v. First State Ins. Co.* (Pa. Super. Ct. 2000) 2000 Pa. Super. 56 [746 A.2d 649] *(Stevens Painton)* and *National Union v. City of St. Louis* (Mo. 1997) 947 S.W.2d 505 *(National Union)* as cases that apply the phrase "but only with respect to" in a focused narrow fashion that would preclude coverage in this case. Because the *Syufy* court cited *Consolidation Coal* with approval, Hartford argues that California courts would also recognize the distinction it seeks to make in this case.

The *Consolidation Coal* case involved an endorsement that added an additional insured, " 'but only with respect to <u>acts or omissions of the named</u>

insured in connection with the named insured's operations.' " (*Consolidated Coal, supra,* 406 F.Supp. at p. 1294.) The focus of the court's analysis in *Consolidation Coal* was the meaning of the words "acts or omissions." (*Id.* at p. 1298.) The court held that unless the additional insured's liability was the result of an act or omission of the named insured there was no coverage. (*Id.* at pp. 1298–1299.) In that case, the sole cause of the injury was the act of the additional insured's employee. (*Id.* at p. 1294.) The underlined language that narrowed the meaning of the endorsement in *Consolidation Coal* is not present in Hartford's policy.

In *Stevens Painton, supra,* 746 A.2d 649, the contractor's employee was injured when he fell on a road while leaving the jobsite for a personal errand. (*Id.* at p. 651.) The employee sued the owner of the construction project. The contractor failed to honor a requirement in the construction contract that it name the owner as an additional insured in its primary policy, but its excess policy included as insureds persons to whom the insured was obligated by contract to provide insurance. (*Id.* at p. 652.) The coverage afforded to the owner was "only with respect to [contractor's] operations, or facilities [that the contractor] own[s] or use[s]." (*Id.* at p. 656.) The court noted that the term " 'operations' " was not defined in the policy. (*Id.* at p. 657.) Because the employee was on his way to a personal errand at the time of injury, the court determined that he was not involved in his duties for the contractor, and that the injury occurred outside the location of the contractor's operations. (*Id.* at p. 658.)

Although the *Stevens Painton* court was concerned with the language "but only with respect to," it seemingly equated that phrase to "arising out of" when it agreed with the trial court's determination that the worker's injury "did not arise out of the operations of [the contractor]." (*Stevens Painton, supra,* 746 A.2d at p. 656.) The Pennsylvania court, in the circumstances of that case, equated the two phrases, but inferred a restrictive meaning for the term "operations."

*National Union, supra,* 947 S.W.2d 505, involved an airport baggage handler who was struck by a car while at work. The issue was whether the injury was covered by policy language including additional insureds " 'solely with respect to the operations' " of the baggage handling company. (*Id.* at p. 506.) Using a restrictive interpretation of the word "operation," the court concluded that being struck by a car was not a part of the company's operations and was not covered. (*Id.* at p. 507.) Like the *Stevens Painton* court, the *National Union* court based its finding on the word "operation" rather than imposing a restrictive meaning on the phrase "with respect to."

Significantly, none of the cited cases focused on the meaning of "but only with respect to," or contrasted that phrase with "arising out of," but each

relied on interpretation of the language following those phrases to ascertain the meaning of the policy. The policy in this case does not restrict its coverage to operations, but employs more expansive language.

Because the cited cases involved policies with different language, they are not dispositive of the issue presented here. We interpret the words of the policies before us, using as our polestar the familiar rubrics for discerning meaning. " 'Words used in an insurance policy are to be interpreted according to the plain meaning which a layman would ordinarily attach to them. Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists.' [Citation.]" (*St. Paul Fire & Marine Ins. Co. v. American Dynasty Surplus Lines Ins. Co.* (2002) 101 Cal.App.4th 1038, 1056 [124 Cal.Rptr.2d 818].)　■　Our determination of the meaning of the Hartford policy language begins and ends with the plain meaning of the unambiguous words used.

The Hartford policy in this case applies to more than Cornerstone's "operations" or "acts and omissions." This case does not involve a contractor performing a specific task on an owner's premises, but a landlord and tenant adjusting their ongoing responsibilities for events related to the tenant's occupation of the landlord's property. To reflect this relationship, the insurance coverage pertains to more than just the tenant's work. The coverage extended to MPOC includes not only Cornerstone's operations, but also the additional terms " 'your work' or facilities owned or used by you." The Hartford definition of "your work" extended beyond Cornerstone's operations or responsibility for facilities owned or used, to include liabilities respecting the "providing of or failure to provide warnings or instructions." This provision is more comprehensive than those applying to contractors performing a single defined job on premises owned by another person.[3]

In addition, nothing in the meaning of "only with respect to" hints at a requirement of direct causation. Looking at the plain meaning of the questioned phrase, we find definitions indicating that "only with respect to" merely indicates some relationship. For example, Webster's Dictionary includes among the definitions of "with respect to" and "in respect of" such concepts as "as regards," "with reference to," "in relation to" and "with regard to." (Webster's 3d New Internat. Dict. (2002) p. 1934; see also Merriam-Webster's Collegiate Dict. (10th ed. 2001) p. 995 ["with reference to; in relation to"]; Oxford English Dict. (2d ed. 1989) <http://dictionary.oed.com/cgi/entry/00204214> [as of July 16, 2003] ["to

---

[3] At oral argument, Hartford's counsel indicated that the provision relating to warnings or instructions was intended only for products liability matters. Our review of paragraph 19 of the "Definitions" section of the Hartford policy does not support that suggestion.

have respect to: a. To have regard or relation *to*, or connexion [*sic*] with, something [¶] … [¶] b. To have reference, to refer, *to* something"].)[4]

■ As our Supreme Court observed when considering the word "related" in another context in an insurance policy, "the fact that 'related' can encompass a wide variety of relationships does not necessarily render the word ambiguous. To the contrary, a word with a broad meaning or multiple meanings may be used for that very reason—its breadth—to achieve a broad purpose." (*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 868 [21 Cal.Rptr.2d 691, 855 P.2d 1263].)

We find nothing in the reading of the Hartford policy's broad inclusion of liabilities related to Cornerstone's presence as MPOC's tenant to support the conclusion that Cornerstone must directly have caused the injury in order for Hartford's coverage to be triggered. If Hartford had intended that narrow construction, it could have drafted clear limitations in its policy. The policy language requires no more than "a minimal causal connection or incidental relationship" between the liability and Cornerstone's presence as a tenant in MPOC's building. (*Syufy, supra,* 69 Cal.App.4th at p. 328.)

The coverage afforded in this case relates to subjects much broader than mere operations or use of the interior of the MPOC premises. The Hartford policy, read according to the plain commonsense meaning of its terms, extended coverage to liabilities potentially imposed on MPOC that are related to Cornerstone's business presence in MPOC's facilities, as well as specific events occurring during the actual performance of Cornerstone's own work or operations.

The trial court correctly determined that the wording of the policy did not require a showing of direct causation by Cornerstone and that the nexus was more than minimal.

*The Peter Culley Reasoning Does Not Apply in This Case*

Relying on *Peter Culley, supra,* 10 Cal.App.4th 1484, and *Lamb v. Belt Casualty Co.* (1935) 3 Cal.App.2d 624 [40 P.2d 311], Hartford contends that the presumption raised by the settlement of the *Daher* action establishes that the claim had nothing to do with Cornerstone's use of the premises, but was grounded solely on MPOC's own negligence, thereby making the Travelers payment towards the settlement that of a volunteer.

---

[4] "Arising out of," defined as "to originate from a specified source," has no more expansive meaning than "with respect to." (Webster's 3d New Internat. Dict., *supra,* p. 117.) Both phrases connote some connection between two objects or events.

Hartford posits two theses about MPOC's liability in the *Daher* action. First, it argues that if Travelers relies on the presumption that the settled claim is evidence of liability on that claim, then MPOC was only liable for the premises liability and negligence causes of action asserted against it, and not for anything related to Cornerstone's operations or use of the premises. The alternative thesis is MPOC was not liable, for example, if Daher had committed suicide or because Cornerstone's duty to warn superseded MPOC's responsibilities. In the latter instance, Travelers would have settled a claim for which MPOC was not liable and could not recover from Hartford for a voluntary payment without regard to actual liability.[5] (Citing *Union Pacific Corp. v. Wengert* (2000) 79 Cal.App.4th 1444, 1447–1448 [95 Cal.Rptr.2d 68]; *Southern Cal. Gas Co. v. Ventura etc. Co.* (1957) 150 Cal.App.2d 253, 257 [309 P.2d 849], and other indemnity cases.)

*Peter Culley, supra,* 10 Cal.App.4th 1484, involved a dispute over an indemnity agreement between an engineer and an architectural firm involved in a construction project. After the architectural firm settled an action brought by the developer of the project, the developer obtained an assignment of the indemnity rights and sought to enforce those rights against the engineer. The court relied on principles explained in *Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 791–792 [244 Cal.Rptr. 655, 750 P.2d 297] *(Isaacson),* and *Lamb v. Belt Casualty Co., supra,* 3 Cal.App.2d at pages 631–632, to determine the effect of a settlement on the parties' indemnity rights. (*Peter Culley, supra,* 10 Cal.App.4th at pp. 1493–1494.)

The *Peter Culley* court stated the general rule that when " 'a settlement of the litigation has been made, the question whether the liability of the insured was one which the contract of insurance covered is still open, as is also the question as to the fact of liability and the extent thereof, and these questions may be litigated and determined in the action brought by the insured to recover the amount so paid in settlement.' " (*Peter Culley, supra,* 10 Cal.App.4th at p. 1493.) The court, relying on *Isaacson,* described a presumption to aid the insured in proving liability in certain instances. (*Peter Culley,* at pp. 1493–1494.)

The *Isaacson* presumption arises when an insurer wrongfully fails to defend a claim or provide coverage, the insured settles the claim and then brings an action to recover the settlement from the insurer. A reasonable settlement of the third party's claim against the insured raises a presumption that the insured was liable in the amount of the settlement. The burden then shifts to the insurer to produce evidence disputing the presumption. (*Isaacson, supra,* 44 Cal.3d at pp. 791–792; *Pruyn v. Agricultural Ins. Co.* (1995)

---

[5] The second possibility is not an issue in this case. Hartford admits that it has never contended that MPOC had no liability in the *Daher* action.

36 Cal.App.4th 500, 509 [42 Cal.Rptr.2d 295] [*Isaacson* presumption arises after wrongful failure to defend and shifts burden to insurer to prove settlement was unreasonable].)

In this case, unlike the *Isaacson* line of cases, there was no refusal to defend, nor was there a settlement made without the insurer's participation. In fact, it was Hartford itself that defended the *Daher* action and presumably arranged the settlement with the *Daher* plaintiffs in which Travelers participated. Hartford has not contested the amount of the settlement or the fact of MPOC's liability, but only seeks to show that the *Daher* claim was not covered by the additional insured endorsement to its policy.

Also, the dispute here is not between an insured and a reluctant insurer. The *Isaacson* court itself stated that the presumption has no application unless there has been a denial of coverage or refusal to defend.[6] (*Isaacson, supra,* 44 Cal.3d at p. 794.) The issue here is whether Hartford or Travelers, or both, are responsible for the sums paid to settle the action. The *Isaacson* presumption of shifting the burden in this case is not needed. The battle is between two insurers who participated in the underlying action and who do not dispute the fact of MPOC's liability or the amount thereof. Normal principles of contract interpretation and equitable contribution are appropriate to resolve the issues between the two carriers.

Hartford attempts to restrict the inquiry regarding coverage to the two causes of action pled in the *Daher* complaint. According to Hartford, those allegations establish that MPOC alone was liable for the alleged injury. Hartford argues that the *Daher* action alleged only premises liability and negligence against MPOC for its own actions.[7] But Hartford cannot ignore the other available facts, including those produced in support of the summary judgment motion, the lease provisions and the broad language of the additional insured endorsement in its own policy.

"Defendant cannot construct a formal fortress of the third party's pleadings and retreat behind its walls. The pleadings are malleable, changeable and amendable. ... [C]ourts do not examine only the pleaded word but the potential liability created by the suit." (*Gray v. Zurich Insurance Co.* (1966)

---

[6] Our Supreme Court has also characterized *Isaacson, supra,* 44 Cal.3d 775, and *Lamb v. Belt Casualty Co., supra,* 3 Cal.App.2d 624, as standing "at most, for the proposition that, when an insurer breaches one of its duties, the insured may recover damages for harm arising therefrom, including an amount that it paid a third party in settlement." (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 970 [103 Cal.Rptr.2d 672, 16 P.3d 94].)

[7] It is likely that Cornerstone was not named in the complaint because of the exclusive remedy bar of the workers' compensation laws. (Lab. Code, § 3602, subd. (a).)

65 Cal.2d 263, 276 [54 Cal.Rptr. 104, 419 P.2d 168].) Similarly, we are not limited by the face of the complaint in determining whether MPOC's liability in the *Daher* case is covered under the Hartford policy, but need to examine all relevant factors.

The terms of the lease between MPOC and Cornerstone, requiring indemnification, additional insured status and excess status for the landlord's insurer, illustrate the intent of the parties to ensure that the tenant's insurance would protect the landlord from any liability related to the tenant's presence and activities on the landlord's property.[8] Hartford fails to consider its own broad policy language, including coverage for liabilities regarding Cornerstone's use of the facilities and its failure to warn or give instructions. Hartford's policy covered MPOC for liability related to Cornerstone's tenant activity in MPOC's building. As noted above, when the landlord is held liable for an injury related to the tenant's use of the property, the policy language in this case covers the landlord. There is no limitation to the tenant's "operations" and no requirement that the tenant be at fault.

The only harm alleged in the *Daher* complaint resulted from Daher's death when he fell from MPOC's building.[9] Hartford has not disputed that Daher was working late in his office on the night of his death. It has not disputed the fact that Cornerstone employees used the deck area on the outdoor balcony of MPOC's facilities. In addition, evidence was presented to the trial court that California's Division of Occupational Safety and Health (Cal/OSHA) cited Cornerstone on October 8, 1999, for a safety violation because it failed to inform employees of the potential workplace hazard of falling if they stepped off the wooden deck on the balcony.[10]

The particular facts of this case show a sufficient connection between Daher's death and Cornerstone's business use of the facilities of MPOC to

---

[8] The MPOC-Cornerstone lease stated that Cornerstone agreed to endorse its Hartford policy to provide that its insurance was "primary with respect to Landlord and that any other insurance maintained by Landlord is excess and noncontributing with such insurance."

[9] Although the *Daher* complaint alleged that MPOC failed to use due care in the management of its property in that it did not erect a guard railing as required by the Uniform Building Code, it did not allege either "gross negligence" or "willful misconduct," which were excepted from Cornerstone's obligation to indemnify MPOC.

[10] Hartford objected to the admission of the Cal/OSHA citation for purposes of the summary judgment motion and on appeal. However, when Travelers requested Hartford to admit that the Cal/OSHA citation was issued to Cornerstone because "[r]estrictions regarding access outside of the deck area ... were not enforced and employees were not informed of potential fall hazards if anyone steps off the deck area," Hartford responded: "admit that a notice was issued on or about October 8, 1999, the entire terms of which speak for themselves, and which include the quoted language; except as so admitted, deny." Hartford points to the boilerplate preface to its response to Travelers' requests for admissions to argue that it reserved the right to object to admission of its responses as evidence. However, the specific response admitted the date of issuance of the Cal/OSHA citation and the relevant language without qualification.

effectuate Hartford's coverage. To the extent MPOC had a duty to prevent the employees of a tenant from falling off the roof, that duty is related to the tenant's operations, work, use of the facilities and the tenant's own failure to provide warnings or instructions to its employees.[11] This kind of accident is the precise reason why a landlord obtains coverage as a tenant's additional insured—to protect against liability imposed on the landlord because of the occupation and use of the landlord's property by the business tenant.

*The Trial Court Correctly Declined to Order Equitable Contribution*

Hartford's final contention is that the trial court erred when it gave effect to the excess clause in the Travelers' policy and required Hartford to pay all of the defense and indemnity costs of the *Daher* action. Hartford seeks pro rata reimbursement of the amounts so expended.

The parties agree that the allocation of damages between coinsurers is an equitable matter for the trial court. The parties dispute the applicable standard of review, with Travelers urging an abuse of discretion standard and Hartford urging de novo review. Travelers' position is correct. "Summary judgment motions usually raise matters of law, but not when the trial court grants or denies such a motion on the basis of equitable determinations. [Citation.] The matter then becomes one of discretion, which this court reviews under the abuse of discretion standard. [Citation.] ' "From the very nature of equity, a wide play is left to the conscience of the chancellor in formulating his decrees." ' [Citation.]" (*Dieden v. Schmidt* (2002) 104 Cal.App.4th 645, 654 [128 Cal.Rptr.2d 365] [discussing equitable subrogation]; see also *Centennial Ins. Co. v. United States Fire Ins. Co.* (2001) 88 Cal.App.4th 105, 110–111 [105 Cal.Rptr.2d 559] [abuse of discretion standard in review of appropriate method of allocating defense costs among insurers].)

In evaluating competing claims for equitable contribution, the trial court exercises its discretion to weigh the equities to " ' "accomplish ultimate justice." ' " (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1305–1306 [77 Cal.Rptr.2d 296] (*Fireman's Fund*).) Because resolution of this conflict between Hartford and Travelers involves consideration of the equities of the case, we use the abuse of discretion standard of review to uphold the determination in this case.

Hartford, citing *Fireman's Fund, supra,* 65 Cal.App.4th 1279 [77 Cal.Rptr.2d 296] and similar cases, argues that excess only clauses, like the Travelers clause, are disfavored "escape clauses" which generally are

---

[11] Contrary to Hartford's argument, the policy language does not limit coverage to the lease description of "premises." The broad policy language includes "facilities owned or used by you."

not enforced.[12] We do not disagree with the discussion or result in the *Fireman's Fund*case. However, we do find that its facts differ significantly from this case, and reach a different result based on the facts and equities of this case.

In *Fireman's Fund,* the policies of the insurers overlapped a part of the relevant time period and contained identical broad "other insurance" clauses that provided, without limitation, that the insurance was excess as to any " 'valid and collectible insurance including but not limited to coverage as an additional insured under another policy against such losses as may be covered by this policy.' " (*Fireman's Fund, supra,* 65 Cal.App.4th at p. 1303, fn. 8.)

The *Fireman's Fund* court discussed the general rule regarding conflicting other insurance clauses and an exception to the rule. "Contractual terms of insurance coverage are honored whenever possible. The courts will therefore generally honor the language of excess 'other insurance' clauses when no prejudice to the interests of the insured will ensue. However, there are many exceptions. For example, where two or more primary insurers' policies contain excess 'other insurance' clauses purporting to be excess to each other, the conflicting clauses will be ignored and the loss prorated among the insurers on the ground the insured would otherwise be deprived of protection. [Citations.]" (*Fireman's Fund, supra,* 65 Cal.App.4th at pp. 1304–1305.)

The *Fireman's Fund* court explained that even when two policies have conflicting other insurance clauses where one requires proration and one claims to be excess, a court considers " 'varying equitable considerations which may arise, and which affect the insured and the primary and excess carriers, and which depend upon the particular policies of insurance, the nature of the claim made, and the relation of the insured to the insurers.' " (*Fireman's Fund, supra,* 65 Cal.App.4th at p. 1305.) Noting in that case that the insured had no other insurance for four of the years that the Fireman's Fund policies were in effect, the court determined that the policies were purchased with the intent that they be primary policies. (*Id.* at p. 1307.)

---

[12] "There are several typical forms of 'other insurance' clauses:

"1. Pro rata. This clause provides that if there is other valid and collectible insurance, then the insurer shall not be liable for more than his pro rata share of the loss.

"2. Excess. This clause provides that if there is other valid and collectible insurance, then the insurer shall not be liable except to the extent that the loss exceeds such other valid and collectible insurance (i.e., this policy shall be excess to other valid and collectible insurance).

"3. Escape. This clause provides that the insurer is not liable for any loss that is covered by other insurance (i.e., the existence of other insurance extinguishes insurer's liability to the extent of such other insurance)." (*Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.* (1981) 126 Cal.App.3d 593, 598 [178 Cal.Rptr. 908].)

We are aware that the recent trend is against rigid enforcement of excess only clauses. "In *Commerce & Industry Ins. Co. v. Chubb Custom Ins. Co.* (1999) 75 Cal.App.4th 739 [89 Cal.Rptr.2d 415] [*Commerce & Industry*], the court noted that although 'there is authority that an excess only clause will prevail over either a pro rata clause or an escape clause[,] the recent trend is to pro rate the loss between the carriers.' (*Id.* at p. 749, citing Croskey et al., Cal. Practice Guide: Insurance Litigation [The Rutter Group 1999] ¶¶ 8:27 to 8:29, pp. 8-6 to 8-7.)" (*Pacific Indemnity Co. v. Bellefonte Ins. Co.* (2000) 80 Cal.App.4th 1226, 1237 [95 Cal.Rptr.2d 911]; see also DiMugno & Glad, Cal. Insurance Law Handbook (2003) § 60.03, p. 1260.)[13] Notwithstanding the trend, this case presents equities that favor enforcement of the excess clause as written, as we now explain.

The Travelers policy provided that the coverage was primary except in limited instances pertaining to fire insurance, when it was excess. The relevant portion of the Travelers endorsement titled "Other Insurance-Additional Insureds" added that the Travelers coverage was also excess as to "valid and collectible insurance available to [MPOC] if you are added as an additional insured under any other policy."

The Hartford policy also provided that it was primary, except when there is other insurance for fire, extended coverage, builder's risk, and similar coverage, and when Cornerstone was an additional insured under another policy. When its coverage was primary, the Hartford policy provided that Hartford would share with other valid and collectible primary insurance.

This review of the language in the two policies highlights the difference between this case and cases following the rationale of *Fireman's Fund, supra,* 65 Cal.App.4th 1279 [77 Cal.Rptr.2d 296]. The policies in this case contain narrow exceptions to their operation as primary insurance. There are no broad "excess only" clauses in either policy that purport to make the coverage excess whenever there is other insurance. Both policies declare themselves to be excess in the situation where the parties and the insurers are most likely to intend that result—when the insured is covered as an additional insured on another party's policy for some specific event or situation. A clause that carves out this intended exception to primary coverage is not similar to an escape clause, where the insurer appears to offer coverage that in fact

---

[13] The Second District Court of Appeal in a recent case refused to enforce an "other insurance" clause. That case involved successive policies with conflicting clauses and enforcement would have inequitably nullified the clauses in the policies of the other primary insurers to allow a carrier with concurrent coverage to escape its obligations. (*Century Surety Co. v. United Pacific Ins. Co.* (2003) 109 Cal.App.4th 1246, 1250 [135 Cal.Rptr.2d 486].) We agree with the result, but find the facts and equitable considerations are not similar to this case.

evaporates in the presence of other insurance. (See, e.g., Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2002) ¶¶ 8:20 to 8:22, pp. 8-6 to 8-7.)

Another reason for enforcing the terms of the policy in this case is that the language in the Hartford and Travelers policies does not conflict. As noted in *Fireman's Fund* and *Commerce & Industry*, the problem posed to those courts involved policies that each claimed to be excess whenever there was other insurance.[14] Literal enforcement of the policy language would have left the insured without coverage. This equitable consideration led the courts to ignore the excess only clauses because they in fact would serve as escape clauses for the insurers—a result that could not have been intended by the policyholders. (*Commerce & Industry, supra,* 75 Cal.App.4th at pp. 744–745 [noting, "if given effect competing clauses would strand an insured between insurers disclaiming coverage in a manner reminiscent of Alphonse and Gaston"].)

Equity should not be employed to override the terms of the insurance policies in this case. By its terms, the Hartford policy is primary except in specified instances that do not apply in this case. The Travelers policy is primary except in the specific instance that does apply in this case—when the insured is named as an additional insured under another policy, which makes the Travelers policy excess by definition. Because the policy terms, as they apply in this case, do not conflict or offend public policy and do not infringe on any rights of the insured, there is no reason to disregard the express terms of both policies.

Moreover, Hartford, for underwriting purposes, was aware that additional insureds would have coverage in certain circumstances through Hartford's special broad form general liability endorsement because Hartford changed its policy to add that endorsement. Hartford accepted the risk of additional insureds such as MPOC and presumably structured premiums accordingly. No inequitable legerdemain of unanticipated risk shifting is present. The trial court did not abuse its discretion by refusing to order contribution.

*The Trial Court Did Not Rely on the Indemnity Clause in the Lease*

Hartford notes that Travelers urged an equitable subrogation argument in the trial court, seeking to assert MPOC's right to contractual indemnity from

---

[14] The policies in *Commerce & Industry* were actually hybrids, with one being a combination of an escape and an excess only clause, and the other being a combination of an escape and a prorate clause. (*Commerce & Industry, supra,* 75 Cal.App.4th at p. 744.) The policies in *Fireman's Fund* purported to be excess to any other policy. (*Fireman's Fund, supra,* 65 Cal.App.4th at p. 1303, fn. 8.)

Cornerstone. Travelers claims that neither it nor the trial court relied on that theory. The case that Hartford discusses in this context, *Travelers Casualty & Surety Co. v. American Equity Ins. Co.* (2001) 93 Cal.App.4th 1142 [113 Cal.Rptr.2d 613], is distinguishable because the insurer in that case attempted to establish its status as an excess carrier solely from the contractual rights between the insureds. (*Id.* at p. 1148.)

The result in this case is based on the language of the relevant policies. References to the terms of the lease serve only to highlight the intent of the parties. Because Travelers does not urge this argument on appeal, we need not comment further.

## CONCLUSION

The judgment is affirmed.

Stein, J., and Swager, J., concurred.

Appellants petition for review by the Supreme Court was denied October 15, 2003. Baxter, J., did not participate therein.