Filed 7/6/21  Estate of Boldon CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| Estate of AL BOLDON, Deceased.<br>_____ | B300764 |
| MAYER NUNN BOLDON,<br><br>        Appellant,<br><br>        v.<br><br>LATRENA D. CARRINGTON,<br><br>        Respondent. | (Los Angeles County<br>Super. Ct. No. 16STPB02994) |

        APPEAL from a judgment of the Superior Court of Los Angeles County.  Brenda J. Penny, Judge.  Affirmed.

        Law Office of Carol A. Churchill and Carol A. Churchill; Law Office of Alan S. Yockelson and Alan S. Yockelson for Appellant.

        Freeman, Freeman & Smiley, Thomas C. Aikin and Stephen M. Lowe for Respondent.

_____

After a dispute arose concerning a trustee's management of a trust, one of the trust beneficiaries, LaTrena D. Carrington (Carrington),[1] brought an action to compel an accounting and report of the trust against the trustee, Mayer Nunn Boldon (Boldon).  Boldon successfully moved to have the matter arbitrated.  The arbitrator found in favor of Carrington and against Boldon, prompting Carrington to file a petition to confirm the arbitration award in probate court and Boldon to file a competing motion to vacate the award.  The probate court granted Carrington's petition and denied Boldon's motion.  Boldon appeals, arguing (1) the matter was not proper for arbitration, and (2) even if this dispute was subject to arbitration, the arbitrator exceeded his authority.

We affirm.

## FACTUAL BACKGROUND

*The Trust and the Relevant Parties*

This appeal concerns Al Boldon's Family Trust, dated November 2004, as amended (the Trust), which was created by Allifee Boldon (the grantor).  At the time he created the Trust, the grantor was unmarried and funded it with his various real properties.  One such property was located on Pacific Avenue in Long Beach, California, where Boldon was living at the time.

On June 15, 2011, the grantor married Boldon.

Carrington is the grantor's daughter from a prior marriage. She is a beneficiary of the Trust and the first alternate named successor trustee.  The grantor had two other children, Dwayne

---

[1]     Throughout the appellate record, respondent's first name is spelled "LaTrina" and "LaTrena."

A. Carrington (Dwayne)[2] and Keith C. Boldon (Keith), who are also beneficiaries of the Trust.[3]

As is relevant to the issues raised in this appeal, Section 1.7 of the Trust provides: "Grantor provides Trustee with this precatory Statement of Wishes to guide Trustee and Grantor reserves the right from time to time for Grantor to give additional written Statements of wishes to be used as non-mandatory suggestions and guides for the Trustee: [¶] It is the wish of Grantor that [Boldon] shall have the right [to] and privilege to live at the house she presently lives . . . for as long as she lives, and shall pay no rent for her stay in the house. The Beneficiaries of this Trust shall have no right to evict her from the house. However, if [Boldon] vacates the house with no intention to return, then [Boldon] shall be deemed to have given up this right and the house shall be reverted back to the Trust and distributed according to the terms of the Trust." (Bolding omitted.)

Section 5.5 of the Trust contains a broad arbitration provision: "Any dispute arising in connection with this Trust, including any disputes between Trustee and any beneficiary or among Co-trustees shall be settled by . . . arbitration." Further, "[a]ny decision rendered [in arbitration] shall be binding upon the parties as if the decision had been rendered by a court having proper jurisdiction."

---

[2]     Dwayne A. Carrington is identified in the Trust as "Dwyane." We use the spelling used by the parties in their appellate briefs.

[3]     Because some of the parties share surnames, we refer to them by their first names. No disrespect is intended.

3

Section 7.2 of the Trust also provides that "Except for disputes to be settled by arbitration under provisions of this Trust or interpreted under provisions of this Trust, the Trustee or any beneficiaries or interested parties may seek the assistance of the probate court to have the Trust provisions clarified and judicially settled."

On February 6, 2015, the grantor executed the second amendment to the Trust. The second amendment named Boldon to serve as the successor trustee after the grantor, and modified section 2.5(c)(1) to provide that the "Final Distribution of Principal to the Beneficiary" shall be distributed 25 percent each to Boldon, Carrington, Dwayne, and Keith. (Bolding omitted.)

When the grantor passed away on April 10, 2015, Boldon became the successor trustee of the Trust.

## PROCEDURAL BACKGROUND

I. *Carrington's Petition for a Report and an Accounting*

On February 17, 2016, Carrington sent a request to Boldon as trustee, requesting the statutory trustee notification pursuant to Probate Code sections 16061.5 through 16061.8, as well as copies of all trust documents. Boldon advised that assets were being marshaled and that two unidentified pieces of real property had been listed for sale. Carrington followed up with correspondence in May and June 2016 requesting information about administration and an accounting, but she received no response. During this time, Carrington learned that two trust properties had already been sold.

Because of Boldon's failure to respond to the inquiries regarding the disposition of trust properties, on July 29, 2016, Carrington filed a petition for order compelling report and accounting pursuant to Probate Code section 17200. The petition

4

alleged that Carrington, her two brothers, and Boldon were each entitled to receive 25 percent of the Trust's assets, and she requested a preliminary distribution.

On November 18, 2016, Carrington filed a first amended petition. In addition to an accounting, this petition sought Boldon's suspension and removal, and distribution of the Trust. Like the original petition, the first amended petition alleged that Carrington, her two brothers, and Boldon were each entitled to receive 25 percent of the Trust's assets, and she requested a preliminary distribution.

On November 21, 2016, the probate court ordered Boldon to file and serve an accounting for the Trust by December 27, 2016.

II. *Boldon's Motion to Compel Arbitration*

Instead of filing the court-ordered accounting, on December 21, 2016, Boldon filed a verified motion for order compelling binding arbitration and to stay action pending arbitration. The motion was brought pursuant to section 5.5 of the Trust.

Carrington opposed Boldon's motion.

At the hearing on January 27, 2017, the probate court granted Boldon's motion and compelled Carrington's first amended petition to be arbitrated.

In accordance with the probate court's order, on April 21, 2017, Carrington filed and served her demand for arbitration, which sought an accounting and "distribution of the Trust" according to its terms. The "Other Relief" section of the demand specifically requested "Accounting/Distribution." Attached to the demand was a narrative of the dispute, concluding with the following: "An accounting is sought through arbitration, which the beneficiaries will then review and determine whether to

5

object to it and seek surcharges.  [Carrington] will also seek the distribution of the Trust according to its terms."

III.  *Interim Arbitration Award*

While the arbitration proceedings were pending, Carrington learned that Boldon had transferred $455,000 in trust funds to her personal account.

Shortly thereafter, Boldon was suspended as trustee by the arbitrator, and on April 9, 2018, the arbitrator issued an order appointing private professional fiduciary (the interim award). Carrington submitted the interim award to the probate court for approval, and the resulting order confirming the interim award, to which Boldon stipulated, was issued on May 4, 2018.  That order confirmed the suspension of Boldon as trustee, appointed a private professional fiduciary as a successor trustee, and directed Boldon to return $455,000 to the trust.

On April 18, 2018, Boldon recorded a quitclaim deed and gift agreement executed by the grantor on May 7, 1997, acknowledging the gift of a one-third interest in the Pacific Avenue property to Boldon.  The grantor retained a two-thirds interest in the property as tenants in common with Boldon until he conveyed that interest to the Trust by quitclaim deed.

IV.  *Arbitration Proceedings*

Arbitration proceedings commenced on May 24, 2018. After commencement of the proceedings, it was discovered that Boldon had fraudulently transferred a trust property to her nephew.

Following the presentation of evidence, the parties submitted their argument.  As is relevant to the issues raised in this appeal, Boldon claimed a life estate in certain real property owned by the trust.

After argument, the arbitrator submitted his final arbitration award. First, the arbitrator noted that the grantor "died years ago and although [Boldon] was the Trustee upon his death, as of the initial commencement date of the evidentiary hearings, the beneficiaries were still saddled with a grossly inaccurate, in fact, in many respects, a purposefully misleading, accounting. [Carrington] spent years, and no doubt a significant sum of money, in order to [return real property and cash to the Trust] even before her counsel's initial efforts to obtain information in or about February 2016 and thereafter [citations]. Even this result was only achieved long after, and then only following Ms. Boldon's suspension as Trustee following a hearing on April 5, 2018. The suspension resulted from Ms. Boldon's inability to explain a number of irregularities with respect to the Trust. While Ms. Boldon has, over time, proffered a litany of excuses for these circumstances, including having relied upon a number of unqualified or incompetent attorneys, or that [Carrington's] counsel allegedly unduly influenced or intimidated Ms. Boldon's counsel, the one constant throughout all of this was Ms. Boldon herself."

The arbitrator found Boldon "responsible for all that has occurred and the current state of affairs." The arbitrator determined "that there [had] been a pattern of unjustified delay on . . . Boldon's part . . . obfuscation, and abuse of the process and the law designed and intended to ensure that Trustees deal with Trust beneficiaries fairly and appropriately." In fact, "but for [Carrington's] efforts, . . . Boldon would have continued to avoid her fiduciary obligations." Thus, the arbitrator permanently removed her as trustee and then found that the "Trust assets [were] to be divided into four equal shares and then distributed

outright and free of trust to [Carrington], Dwayne, Keith, and Boldon," with Boldon's share reduced by surcharges against her.

Regarding Boldon's claim to life estate in the Pacific Avenue property, the arbitrator noted that although Boldon, "personally and through various of her lawyers, acknowledged she would, as Trustee, be distributing the Trust to all of its beneficiaries, she nevertheless took the position right up to the conclusion of the arbitration proceedings, that the Trust corpus should in fact be held for her sole benefit for the remainder of her lifetime and then, and only then, the balance, assuming any not consumed in furtherance of the [claimed] life estate, would be distributed." The arbitrator rejected her claim. He found that section 1.7 of the Trust was "precatory," and therefore not enforceable or binding on the trustee. In short, section 1.7 did "not create a life estate under the law."

In furtherance of her claim to the Pacific Avenue property, the arbitrator addressed the issue of Boldon's "claim to one-third ownership." As set forth in the final arbitration award: "Technically, the issue of Ms. Boldon's ownership is not properly an issue in this arbitration since the Accountings as they existed at inception made no reference to it, and in fact, contradict it since the Trust is represented to own 100% of the property. Furthermore, subsequent to the date of this deed, Al Boldon executed and recorded a 2004 deed transferring the entirety of the Pacific Property to the Trust and the Trust identifies the Pacific Property as his own. Why Ms. Boldon waited three years to record the deed is open to debate; however, assuming there had [been] a proper delivery with donative intent, Ms. Boldon should be obligated to pay, from her own funds, one-third of the expenses of the Pacific property since April 10, 2015."

8

The arbitrator concluded that Boldon was to be permanently removed as trustee and that Boldon was a 25 percent beneficiary, "without any claimed life estate or other interest which would prevent distribution to all the beneficiaries free of trust."

V. *Petition to Confirm Arbitration Award and Motion to Vacate Arbitration Award*

On December 7, 2018, Carrington filed a petition to confirm the final arbitration award. On January 18, 2019, Boldon filed a competing motion to vacate the final arbitration award.

Following extensive briefing and a hearing, the probate court issued a statement of decision denying Boldon's motion and granting Carrington's petition to confirm the arbitration award. Among other things, the probate court found that there was "nothing in the Probate Code prohibiting arbitration provisions for resolving trust disputes through arbitration." "Accordingly, the use of arbitration to resolve Trust disputes is not generally improper." And, arbitration of the instant dispute was proper. After all, Boldon was the one who brought the motion to compel arbitration in the first place. Thus, she was judicially estopped from contending that the arbitration award could not be enforced.

As for Boldon's challenges to the substance of the arbitrator's award, the probate court noted that an arbitrator's decision is not generally reviewable for errors of fact or law. Thus, even if the arbitrator in the instant case "made a mistake in fact or in law, neither is a possible ground to vacate the award and neither can be used to show he exceeded his authority." To the extent Boldon claimed that the arbitrator exceeded his authority by ruling on matters outside the scope of the demand for arbitration, the probate court found that the arbitrator "did

9

not exceed his authority as the arbitration was not expressly limited" as Boldon contended.

VI. *Judgment*

Judgment was entered confirming the arbitration award, and this timely appeal ensued.

## DISCUSSION

I. *The Arbitrator Did Not Exceed His Authority*

A. <u>Relevant law</u>

An appeal may be taken from a judgment entered after the trial court confirms an arbitration award. (Code Civ. Proc., §§ 1287.4, 1294, subd. (d).) When the parties have elected to submit to binding contractual arbitration, the court will make every effort to give effect to such proceedings. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 (*Moncharsh*).) "The arbitrator's decision should be the end, not the beginning of the dispute." (*Id.* at p. 10.) As a result "'[t]he merits of the controversy between the parties are not subject to judicial review.'" (*Id.* at p. 11.) In brief, we cannot review the validity of the arbitrator's reasoning, the sufficiency of the evidence supporting the arbitrator's award, nor any errors of fact or law. (*Ibid.*)

To encourage parties to settle their disputes through a process intended to be binding, final, and relatively speedy and inexpensive, the scope of judicial review following an arbitration award is "extremely narrow." (*Marsch v. Williams* (1994) 23 Cal.App.4th 238, 243.) An arbitration award that has been confirmed by the superior court "is not subject to judicial review except on the grounds set forth in [Code of Civil Procedure] sections 1286.2 (to vacate) and 1286.6 (for correction)." (*Moncharsh*, *supra*, 3 Cal.4th at p. 33.) The reviewing court

10

"shall confirm the award as made," unless there is a basis for correcting or vacating the award.  (Code Civ. Proc., § 1286.)

Here, the statutory basis alleged for vacating the award is that the arbitrator "exceeded [his] powers and the award cannot be corrected without affecting the merits of the decision."  (Code Civ. Proc., § 1286.2, subd. (a)(4).)  It is well-settled that "this provision does not supply the court with a broad warrant to vacate awards the court disagrees with or believes are erroneous." (*Gueyffier v. Ann Summers, LTD.* (2008) 43 Cal.4th 1179, 1184.)

"When parties contract to resolve their disputes by private arbitration, their agreement ordinarily contemplates that the arbitrator will have the power to decide any question of contract interpretation, historical fact or general law necessary, in the arbitrator's understanding of the case, to reach a decision. [Citations.]  Inherent in that power is the possibility the arbitrator may err in deciding some aspect of the case.  Arbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact, and arbitral awards may not ordinarily be vacated because of such error, for "'[t]he arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement.'"  [Citation.]" (*Gueyffier v. Ann Summers, LTD.*, *supra*, 43 Cal.4th at p. 1184.)

Moreover, consistent with the fundamental nature of the arbitration process, arbitrators may apply both legal and equitable principles and, unless specifically required to act in conformity with the rules of law, arbitrators may act contrary to substantive law and base their decisions upon broad principles of justice and equity.  (*Sapp v. Barenfeld* (1949) 34 Cal.2d 515, 523;

11

*Woodard v. Southern Cal. Permanente Medical Group* (1985) 171 Cal.App.3d 656, 662.) "The entire statutory arbitration scheme is designed to give the arbitrator the broadest possible powers." (*Marcus v. Superior Court* (1977) 75 Cal.App.3d 204, 210.)

"[I]n reviewing a judgment confirming an arbitration award, we must accept the trial court's findings of fact if substantial evidence supports them, and we must draw every reasonable inference to support the award. [Citation.] On issues concerning whether the arbitrator exceeded his powers, we review the trial court's decision de novo, but we must give substantial deference to the arbitrator's own assessment of his contractual authority." (*Alexander v. Blue Cross of California* (2001) 88 Cal.App.4th 1082, 1087.) "Any doubts about the arbitrator's power to decide these issues must be resolved in his favor." (*Roehl v. Ritchie* (2007) 147 Cal.App.4th 338, 347–348.)

B. <u>Analysis</u>

Apply these legal principles, there are no grounds to reverse the probate court's order confirming the arbitration award (and denying Boldon's motion to vacate the award). We agree with the probate court that the use of arbitration to resolve trust disputes is generally proper (see, e.g., *Roehl v. Ritchie*, *supra*, 147 Cal.App.4th at pp. 341, 342, 350 [upholding an arbitrator's award in a matter concerning a trust]), and it certainly was proper in this case. After all, section 5.5 of the Trust provided for arbitration, and Boldon herself moved to compel arbitration. Moreover, there is no evidence that the arbitrator exceeded his authority in making the final arbitration award.

Urging us to reverse, Boldon argues that the arbitrator erroneously "eliminated" a life estate created by section 1.7 of the Trust over trust property. We are not convinced.

The arbitrator interpreted this language as a "non-mandatory wish." This interpretation was proper in light of the Trust's express language. (Prob. Code, § 21122; *Estate of Cairns* (2010) 188 Cal.App.4th 937, 944.) Thus, the arbitrator did not "rewrit[e] the Trust" by rejecting Boldon's contention that the Trust's language was mandatory. And even if the arbitrator erred in his interpretation of this section, pursuant to the legal authority set forth above, that would not be grounds to set aside the final arbitration award.

The arbitrator also properly resolved Boldon's accountings as trustee. Pursuant to section 5.5 of the Trust and Carrington's demand for arbitration, the issue of the trustee's accountings fell squarely within the scope of the arbitration proceedings. And, those accountings were for all Trust property, including the Pacific Avenue property. Thus, to the extent Boldon contends that the arbitrator reached an issue outside the scope of the arbitration proceedings, she is mistaken.

Finally, we reject Boldon's contention that the final arbitration award "[c]anceled the gift of a 1/3 interest in" the Pacific Avenue property. The award did no such thing. The arbitrator was tasked with assessing the Trust's accountings, including the propriety of Boldon's claimed expenses for the Pacific Avenue property. That is exactly what he did.

II. *Boldon is Judicially Estopped from Challenging the Enforcement of the Trust's Arbitration Clause*

While not directly challenging the probate court's finding of judicial estoppel, Boldon indirectly does so by arguing on appeal

13

that arbitration clauses in trusts are unenforceable. Setting aside Boldon's forfeiture of any challenge to the probate court's application of the doctrine of judicial estoppel[4] (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852), her argument fails on the merits.

A. <u>Relevant law</u>

The purpose of the doctrine of judicial estoppel is to protect the integrity of the judicial process. (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181.) It precludes a party from gaining advantage by taking one position, and then seeking a second advantage by taking an incompatible position. (*People ex rel. Sneddon v. Torch Energy Services, Inc.* (2002) 102 Cal.App.4th 181, 189.) It is intended to protect against a litigant playing fast and loose with the courts. (*International Engine Parts, Inc. v. Fedderson & Co.* (1998) 64 Cal.App.4th 345, 350.)

The elements of judicial estoppel are: "'(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.'" (*Owens v. City of Los Angeles* (2013) 220 Cal.App.4th 107, 121.)

We review the trial court's finding that Boldon was judicially estopped from arguing that the arbitration clause in the Trust cannot be enforced for abuse of discretion. (*Hartford*

---

[4] Boldon addresses judicial estoppel in her reply brief, but it is well-established that we do not consider arguments first raised in a reply brief. (*Prang v. Los Angeles County Assessment Appeals Bd. No. 2* (2020) 54 Cal.App.5th 1, 17.)

*Casualty Ins. Co. v. Travelers Indemnity Co.* (2003) 110
Cal.App.4th 710, 724.)  The determination of whether judicial
estoppel can apply to the facts is a question of law reviewed
de novo (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal
Works Co., Inc.* (2005) 36 Cal.4th 412, 424–425), but the findings
of fact upon which the application of the doctrine is based are
reviewed for substantial evidence (*Blix Street Records, Inc. v.
Cassidy* (2010) 191 Cal.App.4th 39, 46–47).

B. <u>Analysis</u>

Here, as the probate court aptly found, each of the elements
of judicial estoppel was met.  Boldon took two positions in these
legal proceedings:  She filed a petition to compel arbitration,[5] and
she later argued that the arbitration provision was
unenforceable.  The probate court accepted the first position:  It
granted her petition to compel arbitration.

These two positions are totally inconsistent.  Boldon
attempts to argue otherwise in her reply brief by claiming that
her positions were not inconsistent because in her motion to
vacate she was arguing that the arbitrator exceeded his
authority.  The appellate record and her appellate briefs tell
another story.  Both in the probate court and on appeal, Boldon
argues that arbitration clauses in trusts violate public policy and
are not enforceable.  That is a totally inconsistent position from
arguing that this matter belonged in arbitration pursuant to the
terms of the Trust.

---

[5]      Boldon's contention that because she did not file the
demand for arbitration, she "did not establish the scope of the
arbitration" is disingenuous given that she initiated the
arbitration proceedings by filing a petition to compel arbitration.

15

Finally, there is no evidence of ignorance, fraud, or mistake. It follows that her challenge to the propriety of the arbitration proceedings fails.

## DISPOSITION

The judgment is affirmed. Carrington is entitled to costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, Acting P. J.
ASHMANN-GERST

We concur:

_____, J.
CHAVEZ

_____, J.
HOFFSTADT