[No. B219624. Second Dist., Div. Five. Dec. 21, 2010.]

BLIX STREET RECORDS, INC., Plaintiff, Cross-defendant, and Appellant,
v.
HUGH CASSIDY et al., Defendants, Cross-complainants, and Respondents;
WILLIAM STRAW, Cross-defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of Discussion, part C.

## Counsel

Greenberg Glusker Fields Claman & Machtinger, Harvey R. Friedman, Aaron J. Moss and Rachel Wilkes for Plaintiff, Cross-defendant and Appellant.

Murphy Rosen & Meylan, Robert L. Meylan, David E. Rosen and Shaunt T. Arevian for Defendants, Cross-complainants and Respondents.

## Opinion

**MOSK, J.**—Appellants appeal from a judgment based on, inter alia, a determination that they were judicially estopped from denying that they were bound by a settlement agreement. We hold that even if the settlement agreement had not been binding, appellants were judicially estopped from denying the enforceability of that agreement because they represented to the trial court that the case had settled and the trial court discharged the jury in reliance on that representation.

### FACTS

Eva Cassidy was a popular singer and songwriter who died in 1996. Her parents, respondents Hugh and Barbara Cassidy, inherited the rights to Eva's work. In November of 1997, the Cassidys, pursuant to an agreement,

exclusively licensed William Straw, doing business as Blix Street Records, the predecessor of Blix Street Records, Inc.,[1] to exploit the rights to the Eva Cassidy audio recordings. The license agreement was modified in 1999.

Disputes between Blix Street and the Cassidys arose over royalty payments and the Cassidys' plan for a motion picture about their daughter's life. The Cassidys had contracted with Allen Gelbard and Eva Cassidy Partners, LLC (ECP) (in which Gelbard was a partner), to make the motion picture. In March of 2004, Blix Street Records, Inc., sued the Cassidys, Gelbard, and ECP concerning the motion picture and an alleged breach of warranty. The Cassidys and their son Daniel subsequently cross-complained against Blix Street for royalties allegedly owing.[2]

The trial of the case commenced in March of 2006, presided over by Los Angeles County Superior Court Judge Lee Edmon. During jury selection, each lead counsel gave a "mini opening statement" to the jury panel. After the jury was selected, Judge Edmon suspended the trial for scheduling reasons and ordered the parties and the jury to report back on April 3, 2006. During the break, the parties engaged in a mediation with the mediator Anthony Piazza. Gelbard, who was in bankruptcy, and ECP did not participate, but their counsel, Christopher Dieterich, indicated they would enter into a settlement so long as they did not have to pay money and received full general releases. Those present at the mediation were Hugh and Barbara Cassidy and their counsel, Brian Sun, who also represented the absent Daniel Cassidy, and Straw (Blix Street) and his counsel. The parties to the mediation reached a settlement and executed a handwritten settlement agreement. The document was signed by Straw, for himself and for Blix Street Records, Inc., Hugh Cassidy, Barbara Cassidy, and Sun for Daniel Cassidy. The "approved as to form" spaces on the document were signed by Blix Street's counsel and Sun for the Cassidys.

The settlement agreement provided, "Although subject to more formal documentation, including the preparation and filing of a dismissal of the entire action with prejudice, this is a final binding agreement subject to judicial enforcement pursuant to CCP 664.6." The settlement agreement extended the licensing agreement and provided for, inter alia, minimum royalties over a period of years, a means to determine the amount of royalties, a business plan, cooperation concerning the motion picture, and releases. The agreement specifically stated that "The parties hereby release all claims of any type or nature from inception through today, including rights as to Gelbard, Engel [a former attorney for some of the parties] and Eva

---

[1] Blix Street Records, Inc., and William Straw, the president of Blix Street Records, Inc., the appellants, are sometimes collectively referred to as Blix Street.

[2] The Cassidys' third amended cross-complaint did not include Daniel Cassidy.

Cassidy Partners, LLC (Gelbard and ECP to be releasors under the more formal agreement documents)" and that Blix Street's first payment to the Cassidys "shall occur upon delivery to Blix's counsel of a full, executed dismissal of the entire action with prejudice and any order necessary from the U.S. Bankruptcy Court and U.S. Trustee."

At the time of the execution of the settlement agreement, Straw believed that there were no additional terms that needed to be negotiated. On March 26, 2006, Blix Street's counsel sent an e-mail to Judge Edmon that stated, "Judge Edmon: the parties reached a settlement at the mediation on Friday, March 24, 2006 and signed a document that can be enforced pursuant to CCP Section 664.6. We need to get a signature from the Eva Cassidy Partnership (Dieterich's client) which should not be that difficult. There are issues relating to the release of claims against Gelbard given his bankruptcy that we need to navigate, but the case has settled."

During the week of March 27, 2006, Straw, an attorney who had negotiated entertainment contracts, began to have concerns about the agreement and what he considered the negative effect it could have on his business. He believed it was one-sided in favor of the Cassidys and decided to take the position that material terms were missing from the settlement agreement and that some existing terms were ambiguous. He testified, "That's—I started thinking about those things. And, if those things weren't worked out, then I really hadn't agreed to anything." Thus, from his perspective, the litigation was not concluded. He said he wanted "to try to get out from under the settlement agreement." He added that it was the "worst agreement I'd ever seen . . . . It didn't contain, even the material terms necessary to settlement [*sic*] the issues that caused the litigation in the first place . . . . They were—it was just missing. No mention." He testified at some length as to the various areas that were not covered by the settlement agreement. He said he did not, however, "withdraw from the deal" because he was "very hopeful" that he could resolve all issues in the long-form agreement negotiations.

The parties returned to court on April 3, 2006. Blix Street's attorneys had not communicated to the Cassidys' attorneys that there was any problem with the settlement agreement, even though Straw believed that an enforceable agreement had not been reached. Blix Street's lead counsel, Bert Deixler, and the Cassidys' lead counsel, Sun, as well as his cocounsel, Frederick Friedman, were present in court. Straw was also present, as were Gelbard and his counsel, Dieterich. In chambers, Sun recalled that he or Deixler informed Judge Edmon that the parties had resolved the case at the mediation and that there were a few things to do, "but that we all felt that [the judge] could dismiss the jury." Another lawyer who was in chambers at that time testified that Sun may have mentioned "there was a bankruptcy issue as to Gelbard."

But no one, including Straw, suggested the settlement agreement was not enforceable, even though Straw had considered telling his counsel to inform the judge that there was no settlement.

Straw testified that Sun stated in the in-chambers meeting that Gelbard was threatening not to sign a settlement agreement unless he received money and that he might sue Blix Street for malicious prosecution. Straw, although "stunned," did not state there was no settlement.

After the in-chambers meeting, Judge Edmon took the bench and called for the jury. She informed the jury as follows: "Good morning to everybody. I have some news for all of you. Since the last time we were together, the case has settled . . . . I can't overemphasize what an important role all of you played in that. Some cases just can't settle until they get right up to trial. And it was seeing all of you and actually getting started that got this case to settle."

After some further comments to the jurors, Judge Edmon dismissed them. Neither Straw nor Deixler informed Judge Edmon prior to the dismissal of the jury that Straw believed the settlement agreement was not enforceable. Then the following colloquy took place: "The Court: Mr. Deixler here, you're plaintiff's counsel. The representation has been made to me in our conversation off the record that this matter is settled. And I just want to hear from all the parties with respect to that issue. [¶] [Deixler]: Yes, Your Honor. The matter, subject to having the long form agreement being prepared and obtaining the approval of the bankruptcy court with regard to the Gelbard piece and the Eva Cassidy Partners piece, the case is settled, subject to those two provisions, which we expect will be resolved in the next 30 days. [¶] [Sun]: The short form agreement, the parties agree that they're going to try to put as quickly as possible. The long form agreement—so we can get that part of it consummated as well. And Mr. Weeks already said there is something in the short form agreement about coordinating with the bankruptcy court certain aspects regarding Mr. Gelbard's status of the case. But the parties have reached a settlement, and we think it's enforceable under the C.C.P. and we have to get the rest of it done." Dieterich, counsel for Gelbard, stated he agreed. After scheduling an order to show cause regarding dismissal after settlement, Judge Edmon concluded by saying to the parties, "Good luck with it," presumably referring to the steps necessary to finalize the settlement.

On April 10, a new attorney for Blix Street wrote to counsel for the Cassidys, stating, "Bill Straw and Blix Street have retained the undersigned to act as transactional attorney in the negotiation of a settlement agreement regarding the above referenced cause. [¶] We have advised our client, based upon the writings so far presented to us for review, that it is our opinion that

the parties['] purported short-form settlement agreement is neither binding nor enforceable for several reasons, including by way of example and not by way of limitation, (i) the omission of at least one necessary party (to wit: defendant Gelbard) as a signatory to the document; and (ii) the ambiguities of a substantive nature therein." On April 24, new litigation counsel for Blix Street reiterated that the settlement agreement was "neither binding nor enforceable" because Gelbard did not sign the agreement and because "there was no meeting of the minds on many material terms."

Blix Street opposed the Cassidys' motion to approve the settlement in the bankruptcy court. At the May 10 hearing in that court, Gelbard personally advised the court that he had signed the settlement agreement and considered the case settled. The bankruptcy court denied the Cassidys' motion without prejudice, finding, "This is a settlement of this trial in the state court, and you've either got a deal that's going to settle the whole trial or you don't, and I think that I should step aside and allow the state court judge to make a determination . . . . Then you should come back here to approve it . . . . I kind of think the judge in Superior Court is going to be a little ticked if you don't go and present a settlement agreement in a trial that you've got sitting there." The court added, "You know, again, if everybody to a settlement comes in and says, 'We're thrilled. Here's the settlement agreement,' you'd be amazed how fast I'll sign the order."

In June, the Cassidys successfully moved the trial court for entry of judgment based on the settlement agreement pursuant to California Code of Civil Procedure section 664.6 (section 664.6). The court stated in the judgment, "In a declaration submitted to the Court, Daniel Cassidy expressly agreed to the terms of the Settlement Agreement and affirmed the authority of his counsel to sign on his behalf. Subsequently, Mr. Gelbard and ECP and their counsel signed the Settlement Agreement."

On appeal from that judgment, we held that the settlement agreement could not be enforced under section 664.6 because it lacked necessary signatures or an oral stipulation before the court, which formalities explicitly are required by that provision. We noted that our ruling did not preclude enforcement of the agreement by means other than section 664.6.[3]

Following remand to the trial court, the Cassidys filed a third amended cross-complaint alleging, inter alia, breach of the settlement contract. The trial court bifurcated the trial and, in a bench trial, tried the settlement contract cause of action. The trial court held in favor of the Cassidys, finding

---

[3] In the dissent, Justice Armstrong took the position that Blix Street should be judicially estopped from denying enforceability under section 664.6.

that even though the settlement agreement did not constitute an enforceable contract, Blix Street was judicially estopped from denying the enforceability of the settlement agreement. The trial court observed that Straw, an experienced attorney, and Blix Street's attorney represented to Judge Edmon that the settlement agreement was enforceable at a time they knew all of the facts that they later contended made the agreement unenforceable. In reliance on those representations, Judge Edmon discharged the jury that had been selected after two days of jury selection and abbreviated opening statements, and vacated the trial date. Thus, according to the trial court, even if the settlement agreement was not otherwise enforceable, Blix Street was estopped from denying its enforceability.

The trial court entered a judgment in favor of the Cassidys and ordered Blix Street Records, Inc., and Straw to comply with their obligations under the settlement agreement. Blix Street Records, Inc., and Straw timely filed a notice of appeal.

## DISCUSSION

### A. Standard of Review

The determination of whether judicial estoppel can apply to the facts is a question of law reviewed de novo, i.e., independently. (See *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 424–425 [30 Cal.Rptr.3d 755, 115 P.3d 41] [rejecting the application of judicial estoppel]; *Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986–987 [12 Cal.Rptr.3d 287, 88 P.3d 24] [rejecting the application of judicial estoppel]), but the findings of fact upon which the application of judicial estoppel is based are reviewed under the substantial evidence standard of review. (See *Kelsey v. Waste Management of Alameda County* (1999) 76 Cal.App.4th 590, 597 [90 Cal.Rptr.2d 510]; *Drain v. Betz Laboratories, Inc.* (1999) 69 Cal.App.4th 950, 959 [81 Cal.Rptr.2d 864]; see also *Bell v. Wells Fargo Bank* (1998) 62 Cal.App.4th 1382, 1388–1389 [73 Cal.Rptr.2d 354] ["Judicial estoppel is an issue of fact, to be decided according to the particular evidence and circumstances of each case. [Citations.] Because the parties produced conflicting evidence showing that the various statements made by plaintiff are not utterly irreconcilable, the issue of judicial estoppel could not be decided as a matter of law"].)

Even if the necessary elements of judicial estoppel are found, because judicial estoppel is an equitable doctrine (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc., supra,* 36 Cal.4th at p. 422; *Levin v. Ligon* (2006) 140 Cal.App.4th 1456, 1468 [45 Cal.Rptr.3d 560]), whether it should be applied is a matter within the discretion of the trial court (*Levin v.*

*Ligon, supra,* 140 Cal.App.4th at p. 1468; *People ex rel. Sneddon v. Torch Energy Services, Inc.* (2002) 102 Cal.App.4th 181, 189 [125 Cal.Rptr.2d 365]). The exercise of discretion for an equitable determination is reviewed under an abuse of discretion standard. (*Hartford Casualty Ins. Co. v. Travelers Indemnity Co.* (2003) 110 Cal.App.4th 710, 724 [2 Cal.Rptr.3d 18].)

"Under the substantial evidence standard of review, our review begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the trial court's factual determinations. [Citations.] Substantial evidence is evidence of ponderable legal significance, reasonable in nature, credible, and of solid value. [Citation.] The substantial evidence standard of review applies to both express and implied findings of fact made by the court in its statement of decision. [Citation.]" (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 501 [61 Cal.Rptr.3d 754].)

## B. *Judicial Estoppel*

### 1. *General Principles*

The doctrine of judicial estoppel, sometimes called the doctrine of " ' "preclusion of inconsistent positions" ' " (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181 [70 Cal.Rptr.2d 96]), " ' "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. [Citations.] The doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies. [Citation.] Application of the doctrine is discretionary." ' (*Koo v. Rubio's Restaurants, Inc.* (2003) 109 Cal.App.4th 719, 735 [135 Cal.Rptr.2d 415], fn. omitted.) The doctrine applies when '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.' (*Jackson v. County of Los Angeles*[, *supra*,] 60 Cal.App.4th [at p. 183] . . . ; *Scripps Clinic v. Superior Court* (2003) 108 Cal.App.4th 917, 943 [134 Cal.Rptr.2d 101])." (*Aguilar v. Lerner, supra,* 32 Cal.4th at pp. 986–987.)

Judicial estoppel is an equitable doctrine to protect against fraud on the courts. (*M. Perez Co., Inc. v. Base Camp Condominums Assn. No. One* (2003) 111 Cal.App.4th 456, 463 [3 Cal.Rptr.3d 563].) It has been said that "[b]ecause of its harsh consequences, the doctrine should be applied with caution and limited to egregious circumstances." (*Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 132 [46 Cal.Rptr.3d 7]; see also *Daar & Newman v. VRL*

*International* (2005) 129 Cal.App.4th 482, 491 [28 Cal.Rptr.3d 566] [judicial estoppel is an " ' "extraordinary remed[y] to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice" ' "].) But unlike equitable estoppel that " ' "focuses on the relationship between the parties . . ." . . . , judicial estoppel focuses on "the relationship between the litigant and the judicial system," and is designed "to protect the integrity of the judicial process." ' " (*Jackson v. City of Los Angeles, supra,* 60 Cal.App.4th at p. 183; see *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc., supra,* 36 Cal.4th at p. 424 ["the equitable doctrine of judicial estoppel targets not only unfairness between individual parties, but also abuse of the judicial system itself"]; see also *Vowers & Sons v. Strasheim* (1998) 254 Neb. 506 [576 N.W.2d 817, 824] ["unlike equitable estoppel, judicial estoppel may be applied even if detrimental reliance or privity does not exist"].) Judicial estoppel may be based on a position taken by a party or party's legal counsel. (*AFN, Inc. v. Schlott, Inc.* (D.N.J. 1992) 798 F.Supp. 219, 224.)

### 2. *Representations of Settlement*

The following facts are uncontradicted: after the jury was selected, all parties signed a settlement agreement except one of the Cassidys (who informed the Cassidys' attorney that the latter had authority to sign on his behalf) and Gelbard and ECP (who informed the Cassidys' attorney that they acquiesced in and would sign the settlement); the settlement agreement stated it was binding and subject to judicial enforcement pursuant to section 664.6; Straw, a transactional attorney, believed the settlement was unfavorable and lacked material terms but did not communicate this belief to the Cassidys or to the trial court; Blix Street's attorney confirmed in open court, with Straw present, that there was an enforceable settlement, that a long form agreement would be prepared, and that bankruptcy court approval would be obtained; based on the representations of counsel that there was a settlement, Judge Edmon dismissed the jury and terminated trial proceedings; and shortly thereafter, Blix Street took the position that there was no enforceable agreement.

■ Blix Street argues that because Deixler, Blix Street's attorney, informed the trial court that a long-form agreement and approval of the bankruptcy court were outstanding issues that needed to be resolved, the parties and the trial court were on notice that any settlement was conditional. Yet, with Deixler present and no objection from him, Sun said, "But the parties have reached a settlement, and we think it's enforceable under the C.C.P. [Code Civ. Proc.] and we have to get the rest done." When parties intend that an agreement be binding, the fact that a more formal agreement must be prepared and executed does not alter the validity of the agreement. (See

*Mitchell v. Exhibition Foods, Inc.* (1986) 184 Cal.App.3d 1033, 1048 [229 Cal.Rptr. 535]; *Pacific Grove-Asilomar Operating Corp v. County of Monterey* (1974) 43 Cal.App.3d 675, 686, [117 Cal.Rptr. 874].) **(4)** The necessity of bankruptcy court approval for a release in a settlement agreement does not foreclose the ultimate enforceability of the settlement agreement. (Cf. *Valencia v. Rodriguez* (2001) 87 Cal.App.4th 1222 [105 Cal.Rptr.2d 281] [settlement agreement entered into during automatic stay can be enforced after dismissal of bankruptcy petition].) The settlement agreement itself recited that it was enforceable, and the parties so represented to the trial court. Bankruptcy court approval seemed to be a foregone conclusion because Gelbard and ECP had no claim against the Cassidys. Any claim for malicious prosecution by Gelbard and ECP against Blix Street would have been eliminated by the dismissal, which would not have been on the merits, and the releases. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871 [254 Cal.Rptr. 336, 765 P.2d 498]; *Eells v. Rosenblum* (1995) 36 Cal.App.4th 1848, 1855 [43 Cal.Rptr.2d 323].) The only impediment to bankruptcy court approval turned out to be opposition by Blix Street.

Although Blix Street does not dispute the statements that were made to Judge Edmon concerning the settlement and its enforceability, Blix Street appears to dispute whether those statements support a reasonable inference of reliance by Judge Edmons. When different inferences may be drawn from undisputed facts, the appellate court should accept the inference drawn by the trial court, unless that inference is inconsistent with clear, positive and uncontradicted evidence. (*Green Trees Enterprises, Inc. v. Palm Springs Alpine Estates, Inc.* (1967) 66 Cal.2d 782, 784–785 [59 Cal.Rptr. 141, 427 P.2d 805] ["When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions from those of the trial court."]; *Fullerton Union High School Dist. v. Riles* (1983) 139 Cal.App.3d 369, 383 [188 Cal.Rptr. 897] [upholding determination of equitable estoppel]; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, §§ 376–377, pp. 434–436.) Here, the trial court inferred from the evidence of the proceedings in Judge Edmon's chambers and in the courtroom that the parties represented to Judge Edmon that there was an enforceable settlement and that she so understood and relied upon those representations. Those inferences are not inconsistent with the evidence.

### 3. *Estoppel to Deny Otherwise Unenforceable Contract*

Blix Street argues that if it is estopped from denying the enforceability of the settlement agreement, it would be bound by an otherwise unenforceable contract and would not receive part of the bargained-for consideration: the general releases from Gelbard and ECP, who had not signed the agreement. Estoppel—whether judicial, equitable or promissory—can, however, be used

to bind a party to what would otherwise be an unenforceable contract. As the court in *International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175, 1189 [101 Cal.Rptr.2d 532] said, "Estoppel is not dependent on the potential merits of a claim but depends on the manner in which a claim is raised or not raised." In *Law Offices of Ian Herzog v. Law Offices of Joseph M. Fredrics* (1998) 61 Cal.App.4th 672, 678–679 [71 Cal.Rptr.2d 771], a party that represented to the trial court that the court could order arbitration without a written stipulation was judicially estopped from contending Code of Civil Procedure section 1281.2 required a written stipulation in that case. (See also *International Billing Services, Inc. v. Emigh, supra,* 84 Cal.App.4th at pp. 1187–1190 [when party's alleged contract provides for attorney fees, that party estopped from later denying that it does], questioned in *M. Perez Co., Inc. v. Base Camp Condominiums Assn. No. One, supra,* 111 Cal.App.4th at p. 456.) Another court has noted that a party can be judicially estopped from asserting that a contract is illegal. (*AFN, Inc. v. Schlott, Inc., supra,* 798 F.Supp. at p. 227; but see *Paterson v. Board of Trustees* (1958) 157 Cal.App.2d 811, 819–821 [321 P.2d 825] [invalid public contract cannot be enforced under an estoppel doctrine].)

In other contexts, estoppel can preclude a party from denying the existence, validity, or enforceability of what otherwise would not constitute an enforceable contract. For example, under the doctrine of promissory estoppel, a party making a promise that the promisor expects to induce action or forbearance and which promise is reasonably relied upon, may be estopped from denying the enforceability of the promise, even if there is otherwise insufficient consideration to support a binding agreement. (See *Drennan v. Star Paving Co.* (1958) 51 Cal.2d 409, 413 [333 P.2d 757]; 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 244, p. 275.) The doctrine of equitable estoppel may estop a party from denying the enforceability of a contract. (See *Monarco v. Lo Greco* (1950) 35 Cal.2d 621 [220 P.2d 737] [estoppel to rely upon statute of frauds]; *Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 372–373 [2 Cal.Rptr.3d 655, 73 P.3d 517] [recognizing estoppel to plead statute of limitations]; *City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 491 [81 Cal.Rptr.3d 72] [insurer estopped from asserting insured's noncompliance with a policy condition]; see also *Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 249, fn. 7 [74 Cal.Rptr. 398, 449 P.2d 462] ["party to be estopped *may not prove certain facts* if he has by his conduct or declarations misled another to his prejudice"]; *Juran v. Epstein* (1994) 23 Cal.App.4th 882, 891–897 [28 Cal.Rptr.2d 588] [equitable estoppel to deny validity of oral agreement not to revoke will]; Evid. Code, § 623 ["Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it"].) Although judicial estoppel, unlike promissory or

equitable estoppel, is not dependent on the reliance of a party (see *Jackson v. County of Los Angeles, supra*, 60 Cal.App.4th at p. 183 [" 'The gravamen of judicial estoppel is not privity, reliance, or prejudice. Rather it is the intentional assertion of an inconsistent position that perverts the judicial machinery.' "]), it nevertheless is based upon the general policies underlying the doctrine of estoppel. The "general reliance" by the trial court and the parties on Blix Street's representation that there was a settlement (see *People v. Castillo* (2010) 49 Cal.4th 145, 169 [109 Cal.Rptr.3d 346, 230 P.3d 1132] ["even though detrimental reliance need not be shown in order to establish judicial estoppel, it is clear there was general reliance . . ."]) supports the application of judicial estoppel. The Cassidys had obtained a trial date and the jury had been picked, but the trial court discharged the jury and placed the trial off calendar in reliance on representations by Blix Street that there was an enforceable settlement agreement.

Blix Street argues that if judicial estoppel is applied, ECP and Gelbard, having not signed the agreement, will not be bound by any release, even though Blix Street will be bound by its release of those parties. But this case involves an action between the Cassidys and Blix Street. In the unlikely event that litigation erupts between Gelbard or ECP and Blix Street, a trial court would have the discretion as to whether or not to invoke the equitable doctrine of judicial estoppel. In sum, there is no justifiable reason why a party cannot be judicially estopped from denying the enforceability of an agreement that might otherwise be unenforceable.

### 4. *Requirements of Judicial Estoppel Met*

Based on the facts, the trial court had sufficient evidence to conclude that Blix Street took two totally inconsistent positions in judicial proceedings—originally that there was an enforceable settlement agreement, but later that the settlement agreement was not enforceable. Blix Street was successful in asserting the first position because the trial court accepted Blix Street's position by terminating the trial and discharging the jury.[4] There is no indication that Blix Street took the first position—that the contract was enforceable—as a result of ignorance, fraud, or mistake. Indeed, Straw, a lawyer, conceded that he believed the settlement agreement lacked material terms at the same time Blix Street was taking the position in the trial court there was an enforceable settlement agreement. Accordingly, the doctrine of judicial estoppel legally could be applied in this case.

---

[4] The court in *The Swahn Group, Inc. v. Segal* (2010) 183 Cal.App.4th 831, 846–851 [108 Cal.Rptr.3d 651], stated there had been some uncertainty over the Supreme Court's requirement in *Aguilar v. Lerner, supra*, 32 Cal.4th at page 986, that a party must be " 'successful in asserting [its] first position (i.e., the tribunal adopted the position or accepted it as true).' "

### 5. *No Abuse of Discretion*

█ Blix Street believed there were issues it could raise as to the enforceability of the settlement agreement but, nevertheless, by representing that there was an enforceable settlement agreement, induced the trial court to discharge the jury and terminate trial. Under these circumstances, the trial court did not abuse its discretion in applying the doctrine of judicial estoppel.

### C. *Breach of Contract**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed. Costs are awarded to respondents.

Armstrong, Acting P. J., and Kriegler, J., concurred.

The petition of appellant Blix Street Records, Inc., for review by the Supreme Court was denied March 2, 2011, S190099.

---

*See footnote, *ante*, page 39.