Filed 3/13/24  Frostfire Vineyard v. Thomson CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| FROSTFIRE VINEYARD, LLC,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>JENNIFER THOMSON,<br><br>  Defendant and Appellant. | A166924<br><br>(Napa County<br>Super. Ct. No. 20CV000377) |

This appeal arises from a boundary dispute between Frostfire Vineyard, LLC (Frostfire) and Jennifer Thomson.  Following a settlement conference, the parties executed a "term sheet" to resolve their dispute by way of a lot line adjustment.  Thomson now challenges an order of the trial court enforcing the term sheet pursuant to Code of Civil Procedure section 664.6,[1] claiming the term sheet is unenforceable because:  (1) Frostfire breached its duty to disclose a material fact regarding the strip of property Thomson was to receive in the settlement; (2) the term sheet lacks reasonable certainty with regard to the proposed fence along the new property line; and (3) Frostfire repudiated the term sheet.  We affirm.

---

[1]  Further unspecified statutory references are to the Code of Civil Procedure.

## FACTUAL AND PROCEDURAL BACKGROUND

Frostfire and Thomson own adjacent vineyard properties on Los Carneros Avenue in Napa. A driveway runs along the common boundary line, with Frostfire's property lying north of the line, and Thomson's property south of it. Two features of each property are noteworthy in this case. On Frostfire's property, there is a residence located approximately two feet or less from the property line. On Thomson's property, there is a reservoir, and a portion of the top of the reservoir abuts the property line.

In May 2020, Frostfire filed suit against Thomson for, among other claims, quiet title to a prescriptive easement and breach of contract. Frostfire alleged that at the time it acquired its property in 2013, the driveway provided the sole means of ingress and egress from Los Carneros Avenue, and that while some portions of the driveway were located on Thomson's property, the driveway had been used by Frostfire's predecessors in a manner that gave Frostfire a prescriptive easement to continue using it. Frostfire further alleged that it had an oral agreement with Thomson that each party would contribute 10 feet of their respective properties for a 20-foot shared space straddling the property line for purposes of the driveway, but after Frostfire began a construction project on its residence in April 2020, Thomson erected a wire fence along the property line that ran through and across the driveway, obstructing vehicular access to Frostfire's residence and the rear of its property.

Thomson filed a cross-complaint against Frostfire for trespass, alleging that Frostfire's contractors left construction vehicles, equipment, and debris on her property and disrupted her farming activities and her quiet enjoyment of the property.

2

After several years of litigation, the parties attended a mandatory settlement conference in early May 2022 and agreed to an exchange of property via a lot line adjustment. Thomson's then-attorney, David Ramos, prepared a summary of the settlement terms and sent it to Frostfire's counsel, Joshua Devore. Ramos and Devore then physically marked the agreed-upon lot line changes on site using flags and string lines. A few days later, Thomson, her attorney, and a surveyor reviewed the flags and string lines at the site. After further negotiations, the parties adjusted the proposed lot line so that Thomson would receive a portion of Frostfire's property adjacent to the reservoir, allowing her to walk along the reservoir's north side.

Counsel for the parties jointly prepared a term sheet, which was finalized and signed by Thomson and Frostfire owner Mike Davis on May 18, 2022. The term sheet begins, "The matter will be resolved via a formal settlement agreement to be agreed upon, containing the following terms for a lot-line adjustment between the parties[.]" It then describes, in significant detail, the areas on each side of the property line that the parties would exchange. As relevant here, the "Strip to Thomson" describes a "reservoir retaining wall," which the parties refer to as the "rock wall" and the surrounding area as the "Rock Wall Area."

The term sheet then sets forth "[a]dditional terms" that Frostfire would pay the cost of the lot line adjustment, as well as "the costs to put in a fence on the new property line. Design same as the existing fence at the Frostfire gate (deer fence with wood frame)[.] Thomson will pay to have surveyor mark the new property line on the ground so the fence can be installed. Parties to execute fence agreement with Frostfire responsible for repair or replacement of fence at its discretion[.]" The case would be "stayed pending

3

completion of the lot line adjustment[,]" and upon its completion, a formal settlement agreement incorporating the provisions of the term sheet would be entered into within 30 days, and the matter would be dismissed with prejudice, with mutual releases of all claims.

Following the execution of the term sheet, the parties stipulated to vacate the trial date and stay the proceedings, and the trial court entered an order on the stipulation.

Several months passed, and in September 2022, Frostfire brought a motion under section 664.6 to enforce the term sheet, claiming Thomson refused to honor its terms. According to Frostfire, Devore sent Ramos a draft of the formal settlement agreement in early June 2022, and over the next few weeks, Devore followed up with Ramos, who said he "was 'working on it.'" Then, in early July 2022, Thomson's newly retained counsel, John McCarron, advised Devore that Thomson was reluctant to acquire the portion of property containing the rock wall area. Frostfire offered to include indemnification language in the final settlement agreement regarding the improvements to the rock wall area, but Thomson declined. McCarron further claimed the lot line adjustment was unclear, and Thomson "destroyed evidence" by removing the stakes and string lines that had been placed along the property line. Frostfire argued the term sheet should be enforced because it was a valid, enforceable agreement, and that Thomson was refusing to honor it in bad faith.

In opposition, Thomson argued it would be unjust to enforce the term sheet because Frostfire engaged in bad faith by failing to disclose that the rock wall area improvements were constructed without necessary permits. Thomson submitted the declaration of civil engineer, Chad Moll, who averred that based on his examination of the rock wall area and a parcel report from

4

Napa County, "the work undertaken to the rock wall and culvert which feeds a reservoir appeared to be constructed without permits from Napa County." Moll further observed that "projects of this nature, where a streambed is involved and a culvert is moved, normally require permits from" the California Department of Fish and Wildlife (CDFW), the California Regional Water Quality Control Board, the United States Army Corps of Engineers, and Napa County.

The trial court granted Frostfire's section 664.6 motion, finding the term sheet to be an enforceable written agreement that contained the essential elements of the parties' agreement to settle the dispute, including sufficiently clear descriptions of the property to be exchanged and the material terms of the fence agreement. As to the permitting issue, the trial court noted "it appears undisputed" the rock wall was "constructed without permits," while also acknowledging that Frostfire did not concede permits were required. But the court rejected Thomson's argument that Frostfire's lack of candor regarding the rock wall area improvements constituted a breach of its duty of good faith and fair dealing, as the court noted that this duty arises after a contract is entered, not before.

The trial court further rejected Thomson's argument that enforcing the term sheet would be unjust. The court found that there was no evidence Frostfire's nondisclosure was intentional. The court further found that because the rock wall area was adjacent to Thomson's property, and Thomson "researched the permit history of Frostfire's property through the course of the litigation[,]" she was on notice of the improvements at the time she negotiated and executed the term sheet. The court also found it noteworthy that "on the day before the Term Sheet was executed, the parties adjusted

5

the lot-line adjustment at or very near the Rock Wall Area for [Thomson's] benefit."[2]

Additionally, the trial court found that Thomson failed to explain and present evidence of the " 'potential liability' " she purportedly faced " 'for Frostfire's illegal work' " or how those improvements " 'would diminish the value of her property.' " The court also emphasized that Frostfire offered to indemnify Thomson for any such liability, but Thomson declined.

Finally, the trial court clarified that it was making "no finding regarding the asserted failure to disclose, any asserted duty on Frostfire's part to disclose, or any finding regarding whether such duty may have been or was breached[,]" and that its ruling to enforce the term sheet was "without prejudice to [Thomson's] rights to seek redress for the asserted failure to disclose the unpermitted nature of the Rock Wall Area."

This appeal followed.[3]

## DISCUSSION

"If parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." (§ 664.6, subd. (a).)

" 'Section 664.6 was enacted to provide a summary procedure for specifically enforcing a settlement contract without the need for a new

---

[2] Here, the trial court's order appears to contain a typographical error that the adjustment was made "for *Plaintiff's* benefit." (Italics added.) Read in context, the court was echoing Frostfire's point that an adjustment to the lot line was made so that Thomson—the defendant in this case—would receive a portion along the north side of the reservoir.

[3] The parties do not dispute the appealability of the order granting the section 664.6 motion. (See *Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1250–1252.)

6

lawsuit.' [Citation.] A trial court 'hearing a section 664.6 motion may receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment.' [Citation.] The trial court may not 'create the material terms of a settlement, as opposed to deciding what terms the parties themselves have previously agreed upon.' [Citation.] Thus, a trial court cannot enforce a settlement under section 664.6 unless the trial court finds the parties expressly consented, in this case in writing, to the material terms of the settlement." (*Bowers v. Raymond J. Lucia Companies, Inc.* (2012) 206 Cal.App.4th 724, 732.)

" 'The trial court's factual findings on a motion to enforce a settlement under section 664.6 "are subject to limited appellate review and will not be disturbed if supported by substantial evidence." ' " (*Karpinski v. Smitty's Bar, Inc.* (2016) 246 Cal.App.4th 456, 461.) Under this standard of review, we resolve all evidentiary conflicts and draw all reasonable inferences to support the trial court's finding that the parties entered into an enforceable settlement agreement and its order enforcing that agreement. (*Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1360.) However, "the objective intent of contracting parties is ordinarily 'a legal question determined solely by reference to the contract's terms,' " which we review de novo. (*Karpinski*, at p. 461.)

### A. Duty to Disclose Material Facts

Thomson contends the term sheet is unenforceable because Frostfire breached its legal duty to disclose the material fact that the rock wall area improvements were constructed without necessary state and federal permits. Frostfire argues, and we agree, that Thomson forfeited this new legal theory by failing to present it below, and that in any event, the record before us does not warrant relief based on Thomson's new theory.

7

" 'As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried.' " (*P&D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1344.) " ' "A party is not permitted to change [her] position and adopt a new and different theory on appeal. To permit [her] to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant." ' " (*Vasquez v. SOLO 1 Kustoms, Inc.* (2018) 27 Cal.App.5th 84, 96.)

Thomson maintains she adequately preserved the issue by arguing below that Frostfire acted in bad faith by failing to disclose the lack of permits. She further contends that an exception to the forfeiture rule applies in this case because the materiality of Frostfire's nondisclosure presents a pure question of law. (See *Ward v. Taggart* (1959) 51 Cal.2d 736, 742.) We are not persuaded by these points. Thomson's theory below was based on the covenant of good faith and fair dealing implied by law into every contract (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 371), a theory the trial court rejected on the facts of this case and Thomson does not reassert on appeal. Her new legal theory is based on the common law duty of real estate sellers to disclose facts materially affecting the value or desirability of real property, a theory that sounds in fraud and involves particular factual questions such as whether the undisclosed matters were "known or accessible only to" the seller, and whether the seller knew such facts were "not known to, or within the reach of the diligent attention and observation of the buyer[.]" (*Lingsch v. Savage* (1963) 213 Cal.App.2d 729, 735–736 (*Lingsch*).) As such, Thomson's new legal theory is not limited to purely legal questions but involves factual matters that Thomson should have first raised and developed below.

Even if we were to overlook Thomson's forfeiture, we would still conclude the record fails to disclose a basis for reversal. Thomson's new theory is based on her claims that the reservoir on her property was fed by a stream that Frostfire enclosed in a culvert in or around 2014 or 2015, and that Frostfire then buried the culvert with fill and built the unpermitted rock wall to hold the fill in place. Thomson maintains these acts required state and federal agency approval because they involved the " 'discharge of a pollutant' " into the "waters of the United States" within the meaning of the Clean Water Act (33 U.S.C., §§ 1251 et seq., 1362(7), 1362(12)); 33 C.F.R. § 328.3(a)(4) [waters of the United States includes adjacent wetlands], (c)(1) [definition of wetlands]; the discharge of "waste into the waters of this state" (Water Code, § 13304, subd. (a)); and the diversion or obstruction of the natural flow of a stream without permission from the CDFW (Fish & Game Code, §§ 1602, subd. (a)).

In response, Frostfire argues that Thomson fails to demonstrate permits were required, as Thomson's reservoir is an agricultural reservoir exempted from the definition of "wetlands" under federal and state law. Frostfire also contends that Thomson's own evidence falls short of establishing that federal or state permits were necessary. On this latter (and dispositive) point, we agree. To prove her new theory under the statutory and decisional authorities cited above, Thomson was required to present relevant evidence regarding the purported natural streambed, including its connection to the reservoir, and specific details regarding the rock wall area improvements, including the materials used to fill the culvert. The record is wholly lacking in these respects. Although Thomson attempts to shore up the record deficiencies by providing a description of the stream and reservoir in

9

her briefing,[4] the only evidence she cites is an aerial photograph of the parties' parcels. That photograph, however, provides no details allowing for a meaningful analysis of whether the rock wall area improvements involved the diversion or pollution of regulable waters under state and federal law.

Thomson's reliance on the Moll declaration fares no better, as Moll states in a general and conclusory fashion that "projects of this nature, where a streambed is involved and a culvert is moved, normally require permits from" various state, federal, and local agencies. Moll provides no foundational facts to support his conclusion that the rock wall area improvements he observed involved a streambed or moving a culvert, let alone that Frostfire's acts constituted the pollution or diversion of regulable waters. On this record, Thomson does not establish that Moll provided sufficient facts and reasons to support his conclusions that state and federal permits were required. (See *Bozzi v. Nordstrom* (2010) 186 Cal.App.4th 755, 763 ["An opinion is only as good as the facts and reasons on which it is based"], citing *Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 523.)

Thomson nevertheless insists a factual finding in her favor was compelled because Moll's declaration was "unrebutted" and there was "no competing substantial evidence to support any implicit finding that the Rock Wall does not require the state and federal permits." We disagree. While it was undisputed that Frostfire constructed the rock wall area improvements without permits, Frostfire in no way conceded that permits were required. Indeed, Frostfire's counsel appeared to dispute the core basis of Thomson's

---

[4] Thomson asserts, without citation to any evidence, that the reservoir is "filled by a natural stream that flowed through a swale or low-lying bed across the [Frostfire] parcel into the reservoir," and that "[i]n high water years, the reservoir spills into a downstream drainage that flows to nearby Carneros Creek."

claims when he averred in his declaration that "[d]uring the course of this litigation, Thomson accused [Frostfire] of filling a 'blue line' stream. There is and was no blue line stream in the portion of the properties north and east of the Thomson Reservoir to be transferred to Thomson by the lot-line adjustment agreed to in the Term Sheet[.]"

In sum, Thomson forfeited her nondisclosure theory by failing to present it below, and in any event, the evidence in the record appears insufficient to establish that state and federal permits were required for the rock wall area improvements.

That is not all. Thomson's theory of nondisclosure also required her to prove that the unpermitted improvements "materially affect[ed] the value or desirability of" the strip to Thomson. (See *Lingsch*, *supra*, 213 Cal.App.2d at p. 735.) On this score, we emphasize the trial court's express finding that Thomson failed to present any evidence that the unpermitted nature of the improvements diminished the value or desirability of the property she was to receive under the settlement. Indeed, the evidence could have supported a contrary finding that the value and desirability of the strip to Thomson was, on balance, materially unaffected by any unpermitted work, as Thomson still stood to gain access to the north side of the reservoir.

Thomson suggests the absence of permits for improvements on real property is a material fact that must be disclosed as a matter of law. But the case she cites, *Milmoe v. Dixon* (1950) 101 Cal.App.2d 257 (*Milmoe*), neither supports such a broad rule nor provides a factually analogous situation to this case. *Milmoe* involved the sale of real property containing a main house and guest house, both of which were improved without building permits and contained hidden structural defects and conditions that did not comply with applicable building codes. (*Milmoe*, at pp. 258–259.) The sellers represented

11

"that they personally erected the dwellings and that the same were sound and well built." (*Id.* at p. 261.) On those facts, *Milmoe* held that the sellers had a duty to disclose that the construction was accomplished without permits, because this fact "materially qualifie[d]" the sellers' other representations. (*Id.* at pp. 260–261.) Here in contrast, the transaction did not involve the sale of property with dwellings, but a negotiated adjustment to a property line, and Thomson does not point to any representations by Frostfire that were materially qualified by its silence regarding permitting issues. Thus, *Milmoe* is inapplicable.

Thomson's new theory would have also required her to show that the undisclosed matters were "known or accessible only to" Frostfire, and that Frostfire knew such matters were "not known to, or within the reach of the diligent attention and observation of" Thomson. (*Lingsch, supra*, 213 Cal.App.2d at p. 735.) But the trial court found, and substantial evidence supports, that Thomson was on notice of the existence of the rock wall area improvements at the time she negotiated and executed the term sheet, and that she, in fact, requested and received records from Frostfire in discovery relating to the general permit history of Frostfire's property. On this record, the trial court reasonably concluded the lack of permits for the rock wall area improvements was not a matter "accessible only to" Frostfire, and that it was "within the reach of the diligent attention and observation of" Thomson. (*Id.* at p. 735.)

Finally, Thomson contends the trial court erred when it enforced the term sheet without prejudice to Thomson's right to seek redress for Frostfire's alleged nondisclosure in a separate case, as the point of section 664.6 is to spare the parties the need to file a new action to enforce or defend against a settlement. But even assuming error, Thomson fails to establish

prejudice.  (See *People ex rel. City of Santa Monica v. Gabriel* (2010) 186 Cal.App.4th 882, 887 [prejudice is not presumed, and appellant has burden to demonstrate miscarriage of justice].)  As we have explained, the evidence in the record appears insufficient to establish that state and federal permits were required for the rock wall area improvements.  Thus, Thomson fails to demonstrate a reasonable probability of a more favorable result absent the court's decision not to reach the merits of the permit issue.

For the foregoing reasons, we conclude that Thomson forfeited her nondisclosure theory, and that in any event, based on the record before us, Thomson has not established a duty on Frostfire's part to disclose that the rock wall area improvements were constructed without state and federal permits.

### B. The Fence Agreement

Thomson contends the term sheet is unenforceable because it calls for the parties' future agreement on a permanent fence but fails to provide sufficient details to make the agreement legally certain and enforceable.  We are unpersuaded.

Like any other contract, a settlement agreement "is unenforceable if the parties fail to agree on a material term or if a material term is not reasonably certain."  (*Lindsay v. Lewandowski* (2006) 139 Cal.App.4th 1618, 1622–1623; see Civ. Code, § 3390, subd. (e).)  " '[R]easonably certain' means the terms 'provide a basis for determining the existence of a breach and for giving an appropriate remedy.' "  (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 141.)  If a material term is missing or not reasonably certain, the trial court may not supply that term to complete the settlement agreement and render it enforceable.  (*Leeman v. Adams Extract & Spice, LLC* (2015) 236 Cal.App.4th 1367, 1374.)

13

Whether a term is material or " 'essential' depends on its relative importance to the parties and whether its absence would make enforcing the remainder of the contract unfair to either party." (*Copeland v. Baskin Robbins U.S.A.* (2002) 96 Cal.App.4th 1251, 1256, fn. 3 (*Copeland*).) Because the question of whether a particular term is material depends on its relative importance, which turns on the intention of the parties, mutual intent is a factual question. (*Coleman Engineering Co. v. North American Aviation, Inc.* (1966) 65 Cal.2d 396, 405.)

Thomson maintains the term sheet lacked material terms establishing performance standards for Frostfire's repair and maintenance of the permanent fence, such as the timing for Frostfire's removal of damaged fence that fall on Thomson's property; the conditions under which Thomson may remove such materials herself; whether Frostfire must reimburse Thomson for such work; and whether a party must pay for damages that it causes to the fence. Faced with these and other similar arguments below, the trial court found there was "no evidence . . . suggesting that either [Frostfire] or [Thomson], in this action, were or are concerned with any of these matters. The matters identified strike the Court as matters that may, but would not typically be, included in a fence agreement of the type contemplated." In other words, the trial court found that the specific concerns identified by Thomson were not material or essential to the parties' intent in executing the term sheet. We conclude substantial evidence supports this decision.

The purpose of the term sheet was to set forth a framework to resolve the parties' dispute over their shared use of the driveway area by adjusting the property line so that each side would have sufficient space to conduct their vineyard and other operations, and then erecting a permanent fence along the new property line to prevent future encroachments. Essential to

14

the fence-related terms was that the parties understood where and how the permanent fence would be erected, including who would pay for the various associated costs. On this score, the term sheet clearly indicated that Frostfire would pay the costs to erect the fence on the new property line, using the same design as an existing fence on its property; that Thomson would pay for a surveyor to mark the new property line where the fence would be installed; and that Frostfire would be responsible for repair or replacement of fence at its discretion. As such, the term sheet provided reasonable certainty on the fence-related terms that the parties evidently deemed as important to the resolution of their dispute over the shared use of the driveway area.

As the trial court sensibly concluded, the circumstance that the term sheet calls for the parties' future execution of a formal fence agreement does not render the term sheet unenforceable. "When parties intend that an agreement be binding, the fact that a more formal agreement must be prepared and executed does not alter the validity of the agreement." (*Blix Street Records, Inc. v. Cassidy* (2010) 191 Cal.App.4th 39, 48.) Here, it was reasonable for the parties to leave the execution of a formal fence agreement to a future date because the fence-related terms were contingent upon the lot line adjustment being completed and approved by the county. The fence-related terms are still sufficiently certain as to the obligations of each party once the lot line adjustment is completed.

Contrary to Thomson's suggestion, the term sheet is not lacking in reasonable certainty simply because the fence might in the future deteriorate and lead to more disputes. The absence of specific terms regarding hypothetical future conflicts does not render enforcement of the remainder of the term sheet unfair. (See *Copeland*, *supra*, 96 Cal.App.4th at p. 1256, fn. 3.) Indeed, Thomson still obtains the benefit of her bargain to settle this

15

dispute through the lot line adjustment and the erection of a permanent fence on the new property line.

Nor is the term sheet unenforceable because it gives Frostfire "discretion" with respect to repairing or replacing the fence. "[W]hen a contract gives one party a discretionary power affecting the rights of the other, that party must exercise its discretion in good faith and in accordance with fair dealing." (*Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corp., U.S.A.* (2013) 221 Cal.App.4th 867, 882.)

For these reasons, we conclude substantial evidence supports the trial court's finding that the term sheet did not lack material terms regarding the permanent fence.

### C. Repudiation of Contract

Thomson contends the term sheet cannot be enforced because Frostfire repudiated it, as reflected in two statements of Frostfire's counsel following the execution of the term sheet. First in July 2022, Devore told Ramos that Frostfire would go "back to Court" and "move to reopen the case if we do not hear from you immediately" regarding the draft of the final settlement agreement. Then, in August 2022, after McCarron raised issues about the rock wall area improvements, Devore offered to exclude the rock wall area in the strip to Thomson. Thomson contends these statements demonstrate that Frostfire did not consider itself bound by the term sheet's key provisions, nor did Frostfire consider enforcement of the term sheet a remedy for Thomson's defiance.

Frostfire again contends Thomson forfeited this argument by failing to present to the trial court in the proceedings below. We agree, and in any event, conclude the contention is lacking in merit.

16

In general, the law recognizes a party's repudiation of a contract as a form of anticipatory breach. "[A]n anticipatory repudiation of the contract, or anticipatory breach, occurs before performance is due under the contract and results in a total breach. [Citation.] A party anticipatorily breaches a contract expressly by unequivocally refusing to perform, or impliedly by conduct 'where the promisor puts it out of his power to perform so as to make substantial performance of his promise impossible.' [Citation.] A promisor's anticipatory repudiation permits the promisee to recover damages immediately for a total breach of contract without performing or offering to perform any conditions precedent under the contract." (*County of Solano v. Vallejo Redevelopment Agency* (1999) 75 Cal.App.4th 1262, 1275–1276 (*County of Solano*).) "Whether there is a material breach of a contract is in general a question of fact." (*Porter v. Arthur Murray, Inc.* (1967) 249 Cal.App.2d 410, 421–422.)

Applying these principles, and drawing all reasonable inferences in support of the judgment, we conclude the evidence does not support Thomson's theory that Frostfire repudiated the term sheet. The statements of Frostfire's counsel in July and August 2022 did not manifest a clear, positive, and unequivocal refusal by Frostfire to perform. To the contrary, the statements, viewed in context, sought to prompt Thomson's follow through on the term sheet, just as Frostfire intended to do. Nor does Thomson persuade us that the evidence reflects an implied repudiation of the term sheet, as nothing Frostfire or its counsel said or did " 'put[] it out of [Frostfire's] power to perform so as to make substantial performance of [its] promise impossible.' " (*County of Solano*, *supra*, 75 Cal.App.4th at p. 1276.)

In sum, Thomson forfeited her repudiation theory by failing to present it below. Moreover, and in any event, the theory fails to warrant relief

17

because the evidence does not reflect Frostfire's express or implied repudiation of the term sheet.

## DISPOSITION

The order granting Frostfire's section 664.6 motion is affirmed. Frostfire shall receive its costs on appeal.

_____

Fujisaki, Acting P. J.

WE CONCUR:

_____

Petrou, J.

_____

Rodríguez, J.

*Frostfire Vineyard v. Thomson* (A166924)

18